## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TAMMY GRIFFITH,**                                        **CIVIL ACTION**

**VERSUS**                                                          **NO. 11-245**

**STATE OF LOUISIANA, et al.**                          **SECTION "C" (1)**


### ORDER AND REASONS[1]

Before this Court are motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  (Rec. Docs. 97; 98; 99; 101; 105).  Movants, The Honorable Chief Judge Ernestine

Gray, Honorable Judge Lawrence Lagarde, Jr., Honorable Judge Tammy Stewart, Honorable Judge

Tracey Fleming-Davillier, Honorable Judge Candice Bates Anderson, Honorable Judge Mark

Doherty, and Former Chief Judge David Bell (hereinafter collectively referred to as  "Judges"), the

State of Louisiana ("State"), the Orleans Parish Juvenile Court ("OPJC"), the City of New Orleans

("City"), and Pernell Denet ("Denet") have filed these motions in response to a complaint filed by

Plaintiff, Tammy Griffith ("Griffith").  (Rec. Doc. 86).  Having considered Plaintiff's complaint,

Defendants' Motion, the parties' memoranda, and applicable law, Defendants' Motions to Dismiss

are **GRANTED** in part and **DENIED** in part for the following reasons.


### I. BACKGROUND

Griffith held the position of "Orleans Parish Juvenile Court Fiscal Manager" under the

supervision of the Judicial Administrator's Office until her termination on November 18, 2010.  *Id.*

at 8, 19.  She alleges that she was employed by both the City of New Orleans and the OPJC.  *Id.* at

7-8.  She alleges that over the course of three and a half years, between March 24, 2008 and June

---

[1] Max Weiss, a second-year student at Tulane University Law School, assisted in preparing this Order.

1, 2010, she was subjected to sexual harassment by Judge Bell. *Id.* at 14, 21, 32. During this time she never filed a complaint or went on the record with this allegation on her own behalf. *Id.* at 27-28. In January 2010, Bell took an extended medical leave of absence and Judge Gray replaced him as Chief Judge. *Id.* at 23. Griffith alleges that in March 2010, Judge Gray asked her whether Judge Bell had made any inappropriate sexual remarks to her and Griffith responded, "Yes, all the time." *Id.* at 27-28. Griffith then alleges that Judge Gray asked her if she would be willing to go on record with a complaint regarding Judge Bell's sexual advances, to which Griffith declined because "she was afraid of the consequences." *Id.* at 28. Judge Gray ultimately filed a complaint against Judge Bell anyway, claiming that he sexually harassed Griffith. *Id.* at 29. Griffith was subpoenaed to testify before the Judiciary Commission on April 20, 2010, and May 2010, regarding this claim against Judge Bell. *Id.* at 28-29, 30.

On June 7, 2010, a new Judicial Administrator, Pernell Denet, was hired. *Id.* at 33. Over the course of the next several months, Griffith developed a poor working relationship with Judge Gray and Denet, whom Griffith alleges subjected her to a hostile work environment. *Id.* at 23-55. These allegations admit to numerous issues related to Griffith's attitude and quality of work. *Id.* at 23-55. On July 21, 2010, Griffith filed an Equal Employment Opportunities Complaint ("EEOC") against Judge Bell for sexual harassment. *Id.* at 35. In that complaint she also cited to "hostile work conditions under which she was required to work as well as the abuse to which she was being subjected by Judge Gray and [Denet]." *Id.*

On November 17, 2010, Griffith alleges that she was called into an *en banc* meeting of the Judges and questioned about inaccurate financial information in a report. *Id.* at 52-55. Griffith admitted that she had made a mistake in the financial documents, attributing the error to copying the formulas in the wrong cells. *Id.* at 54. The Judges then questioned her on her failure to challenge

2

an unemployment claim.  *Id.* at 55.  The Judges recommended that Griffith's employment be terminated.  *Id.* at 56.  On November 18, 2010, Griffith received a termination letter that indicated she was terminated for incompetency because of numerous errors in a November 17, 2010 report.  *Id.*  On November 23, 2010, Griffith filed an EEO complaint against the OPJC, for alleged retaliation.  *Id.* at 61.  In pertinent part, she claimed that "from the time Judge Gray became Chief Judge, she was a relentless target of [her] abusive workplace conduct."  *Id.*  Griffith further claimed that "although she knew that [Gray] had an obligation to report the sexual harassment to which she was being subjected by Judge Bell, she believed that Judge Gray knew that [she] did not want to testify against Judge Bell for fear of losing her job and for fear of her own and her child's safety but did absolutely nothing to protect [her] and other OPJC employees directly impacted by Judge Bell's conduct and the effects of their effects of having to testify against him."  *Id.* at 61-62.

Griffith brings suit pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and state discrimination and tort law.  *Id.* at 2.  Griffith seeks compensatory, special, and punitive damages allegedly resulting from: (1) sexual harassment by former Chief Judge David Bell ("Judge Bell") at the Orleans Parish Juvenile Court ("OPJC") over a period of three and a half years while she worked as an accountant there; (2) intentional infliction of emotional distress ("IIED"), harassment, and fear for safety from the actions and inactions of Chief Judge Ernestine Gray ("Judge Gray"); (3) IIED and harassment from Judicial Administrator Pernell Denet ("Denet"); and (4) retaliatory actions taken by OPJC through all of its sitting judges acting in their individual and official capacities.  *Id*. at 2-3.  Allegedly, these actions culminated in Griffith being fired.  *Id.* at 3.  Griffith claims that the OPJC is directly liable for the actions and results she complains of due to its policies, practices, procedures, and customs, as well as its responsibility for hiring, training, supervising, and controlling the OPJC personnel.  *Id*. 3-4.  Griffith further claims that the City of

3

New Orleans, which allegedly was her employer at all relevant times, is liable for the acts and omissions complained of due to the nexus between OPJC's policies, customs, and practices and those of the City, which govern OPJC employee salaries, benefits, and grievances. *Id.* at 4. Griffith also claims that the State is directly liable for the acts complained of because it is responsible for the training, supervision, discipline, and control of OPJC personnel. *Id.*

Griffith concedes several of her claims, including her Section 1983 claims against Denet and the Judges in their official capacities and Title VII and state employment discrimination claims against the Judges are lacking in foundation. (Rec. Docs. 65-1 at 4; 104-1 at 2;107-1 at 1). These claims are therefore DISMISSED. Thus, the remaining claims for this Court to address include all claims against the State and OPJC, IIED claims against the Judges and Denet, Title VII and state employment discrimination against the City, and Section 1983 claims against the City and the Judges and Denet in their individual capacities.

## II. LAW & ANALYSIS

### Standard Under Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint in whole or in part where the plaintiff has failed "to state a claim upon which relief may be granted." In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d. 190, 196 (5th Cir. 1996). Although courts are required to take as true all factual allegations in the complaint, they are not bound to accept labels, conclusions, or formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right of relief above the speculative level. The pleading must

contain something . . . more . . . than . . . a statement of facts that merely creates a suspicion [of ]
a legally cognizable right of action, on the assumption that all the allegation in the complaint are true
(even if doubtful in fact)." *Id.* (citations and quotations omitted).  The plaintiff must allege "enough
facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "[C]onclusory allegations or
legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to
dismiss." *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278 (5th Cir. 1993).

        To defeat a motion to dismiss, a complaint must "contain either direct allegations on every
material point necessary to sustain a recovery" or "contain allegations from which an inference fairly
may be drawn that the evidence on these material points will be introduced at trial."  *Campbell v.
City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citations omitted).  Therefore, a plaintiff must
"plead specific facts not mere conclusory allegations" to avoid dismissal for failure to state a claim.
*Guidry v. Bank of LaPlace*, 954 F.2d 178, 281 (5th Cir. 1992).

        This case involves voluminous and convoluted materials submitted by the parties, including
an eighty-two page amended complaint and over one-hundred of pages of memoranda.  In an effort
to winnow this unwieldy entanglement, certain parties and claims are dismissed outright:

### A. Claims Against the State of Louisiana

        The law of sovereign immunity, derived from the Eleventh Amendment of the Constitution
and considerations of federalism, bars all individuals from suing a state for money damages in
federal court.  *Frew ex. rel. Frew v. Hawkins,* 540 U.S. 432, 437 (2004); *Seminole Tribe of Fla. v.
Florida*, 517 U.S. 44, 54 (1996); *Ussrey v. Louisiana*, 150 F.3d 431, 434 (5th Cir. 1998).  State
officials may enjoy immunity under the Eleventh Amendment when they are sued in their official
capacities.  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  Congress may, however, abrogate a

State's sovereign immunity under Section 5 of the Fourteenth Amendment if congressional intent to abrogate is expressed unequivocally and Congress has acted pursuant to a valid exercise of its power. *Ussrey*, 150 F.3d at 434. In addition, states may waive their sovereign immunity. *Id.*

### 1. *Section 1983 Claim*

Congress has not abrogated the States' sovereign immunity for claims arising under 42 U.S.C. § 1983. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Colony*, 538 U.S. 701, 709 (2003); *Quern v. Jordan*, 440 U.S. 332, 338 (1979); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (per curiam). Furthermore, the State of Louisiana has not waived its sovereign immunity from Section 1983 actions brought against it in federal court. See La. Rev. Stat. Ann. § 13:5106(A) (Supp. 2006) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."). Thus, to the extent Griffith asserts a Section 1983 claim against the State of Louisiana, it is DISMISSED.

### 2. *Title VII Claims*

Sovereign immunity principles, however, do not bar a private citizen's Title VII suit against the State of Louisiana in federal court. *Khan v. S. Univ. & Agric. & Mech, Coll. Bd. of Supervisors*, No. 30-30169, 2005 WL 1994301, at *2 (5th Cir. Aug. 19, 2005). Title VII provides that it "shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a). Thus, crucial to a claim under Title VII is whether the defendant was the plaintiff's employer. Here, Griffith never alleges that the State of Louisiana was her employer. Therefore, any claim against the State of Louisiana under Title VII must be DISMISSED.

3. *State Law Claims*

Louisiana has not waived its immunity in federal court for state law claims: "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana court." La. R.S. § 13:5106. Therefore, any state law claims against the State of Louisiana are DISMISSED.


**B. OPJC**

The OPJC asserts that it lacks the capacity to be sued. (Rec. Doc. 98-1 at 3). Rule 17(b) of the Federal Rules of Civil Procedure instructs that "capacity to sue or be sued shall be determined . . . by the law of the state in which the district court is held." Fed. R. Civ. P. 17(b). Under Louisiana law, an entity must qualify as a "juridical person" to possess the capacity to be sued. *See*, *e.g.*, *Dugas v. City of Breaux Bridge Police Dep't*, 757 So.2d 741, 743 (La. App. 3 Cir. 2000). A juridical person is "an entity to which the law attributes personality." La. Civ. Code. Ann. art. 24.

Griffith cites the case of *Roberts v. Sewerage & Water Bd. Of New Orleans,* in which the Louisiana Supreme Court set forth a framework for determining whether an entity qualifies as a juridical person:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

634 So.2d 341, 346 (La 1994) (citations omitted); (Rec. Doc. 103-1 at 3). In concluding that the

Sewage and Water Board was capable of being sued, the court focused its analysis on the independent management, financing, and operations of the Board. *Id.* at 352. Thus, where there is no constitutional or statutory authority for the entity to sue or be sued, that entity is without capacity under the *Roberts* analysis. *Green*, 2009 WL 651132, at *4 (citing *City Council of Lafayette v. Bowen*, 649 So.2d 611, 613-16 (La. App. 3 Cir. 1994)). Louisiana's state courts are created by the Louisiana Constitution as component parts of a unified state system for the exercise of the state's judicial power. *Id.* (citing La. Const., art. 5 §§ 1 & 16). Thus, the OPJC is not a separate entity, but instead, is a part of the greater body of the state government's judicial branch. *See Green*, 2009 WL 651132, at *5.

This Court finds no law, constitutional, statutory, or otherwise, that confers upon the OPJC the authority to sue or be sued. *See Id.* Griffith fails to cite any authority that applied the *Roberts* framework to find that a Louisiana state court qualifies as a juridical person. (Rec. Docs. 86; 104-1). Rather, this Court has applied the *Roberts* framework and determined that a Louisiana state court does not qualify as a juridical person and thus lacks the capacity to be sued. *See Green,* 2009 WL 651132, at *5. District courts within the Eastern District of Louisiana have consistently held that Louisiana state courts are not juridical persons capable of being sued. See *Rutherford v. Louisiana,* No. 10-1987, 2011 WL 692031, at *5 (E.D. La. Feb. 17, 2011) (Africk, J.) (finding that the 21st Judicial District of the State of Louisiana is not a juridical person); *Ormond v. Louisiana*, No. 09-7202, 2009 WL 6419040, at *2 (E.D. La. Dec. 22, 2009) (Louisiana Fifth Circuit Court of Appeals is not a juridical person); *Green v. Dist. Attorney Office*, No. 08-3685, 2009 WL 651132, at *5 (E.D. La. Mar. 10, 2009) (Division J of the Orleans Parish Criminal District Court); *Swift v. Juvenile Court*, 2009-1182 (La. App. 3 Cir. Mar. 10, 2010) (Juvenile Court for the Parish of East Baton Rouge).

Additionally, Griffith misplaces her reliance on *Beevers v. Jefferson Parish Juvenile Court*, which resolves a juvenile court's standing to sue, but which remains silent as to whether a juvenile court can in fact be sued. 552 So.2d 1317 (La. Ap. 5 Cir. 1989). The issue of capacity or status as a juridical person was not relevant in that case. Accordingly, this Court holds that the OPJC is not a juridical person capable of being sued, and DISMISSES all claims against that defendant.

### C. IIED Claims

Griffith's IIED claims focus on Judge Gray's reporting of Judge Bell's alleged sexual harassment of Griffith, "in full knowledge of the impact that it would have on [her] sense of financial and physical well-being both for herself and her child." (Rec. Doc. 86 at 79). Griffith alleges that Judge Gray "knew that the reason [she] had not reported the [sexual harassment] to which Judge Bell was subjecting her . . . was because she feared for the her own and her son's safety. 'He defended drug dealers and murderers,' and 'I need my job,' [she] told Judge Gray." *Id*. Griffith claims she did not want to testify against Judge Bell because she believed "it would be dangerous for [her] to publically accuse him of sexual harassment." *Id*. at 28. Griffith claims that on June 1, 2010, after she had testified against him, he entered into her office and kissed her on her forehead and then left, which frightened her. *Id*. at 32. Griffith claims that Judge Bell "continued to engage in conduct that she did not welcome and that he knew would cause her severe emotional distress." (Rec. Doc. 114-1 at 4). Griffith acknowledges that Judge Gray was bound by judicial ethics to report the alleged misconduct by Judge Bell, but claims that Judge Gray was also bound by an ethical duty to "guard [her] from undue duress." (Rec. Doc. 86 at 79).

Griffith then claims that Judge Gray "exacerbated [her] psychological and emotional injury, creating an intolerable workplace environment for [her]" by, among other things, allegedly:

9

throwing checks at her, accusing her of misplacing checks, and accusing her of exceeding her authority.  *Id.*  Also, after learning of her EEO complaint filed in July 2010, Judge Gray "instigated actions, or declined to act so as to cause [her] severe emotional grief and psychological distress" such as refusing to intervene on issues between Griffith and Denet.  *Id.* at 80.  Griffith alleges that Denet "knowingly and intentionally complied with and advanced Judge Gray's efforts by her acts and omissions."  *Id.*  Griffith further claims that her alleged injuries sustained were "foreseeable by the other [Judges] as well, who by their silence and/or deliberate indifference, allowed a workplace culture defined by these and other outrageous characteristics to fester" and are therefore jointly and severally liable.  *Id.* at 80-81.

Under Louisiana law, to bring a claim for IIED, the plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired or knew that severe emotional distress would be certain or substantially certain to result from his conduct.  *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La. 1991).  "Extreme and outrageous conduct" is defined as "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.; Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir. 1989).  "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.  *White,* 585 So.2d at 1210.  IIED is its own cause of action, and cannot be proven by mere tortious or illegal conduct.  *Nicholas v. Allstate Ins. Co.,* 765 So.2d 1017, 1025 (La. 2000).

IIED claims will not lie for mere employment disputes since an employer must be free to demote, transfer, discipline, and terminate employees even though such actions will undoubtably be unpleasant and cause emotional distress.  *Johnson v. Merrell Dow Pharm., Inc.,* 965 F.2d 31, 33-

34 (5th Cir. 1992).  "Conduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'" *Barber v, Marine Drilling Mgt., Inc.,* No. 01-1986, 2002 WL 237848, at *8 (E.D. La. Feb. 15, 2002). "[O]rdinary employment disputes, even those involving discrimination and sexual harassment, will rise to the level of [IIED] only in the most unusual of cases." *Id.* Such situations are limited to those where the distress is "more than a reasonable person could be expected to endure." *Nicholas,* 765 So.2d at 1027.  Intentional firing after making a complaint for sexual harassment is not actionable under IIED.  *Barber*, 2002 WL 237848, at *8-9.

For example, in *Smith v. Amedisys Inc.,* the Fifth Circuit affirmed this Court's dismissal of a plaintiff's IIED claim in which the plaintiff alleged that her supervisor sexually harassed her and made sexual advances toward her including touching her leg and attempting to hold her hand, and while on a business trip pulled her to the bed and kissed and touched her.  298 F.3d 434, 437-48 (5th Cir. 2002).  The supervisor also commented about the plaintiff's sex life and "repeatedly suggested that she prostitute herself to obtain business for the company." *Id.* at 438.  The court found that the plaintiff's allegations of "persistent verbal and physical sexual harassment" were properly dismissed because the facts asserted did not demonstrate that "the distress was unendurable." *Id.* at 450. Additionally, in *Charles v. JetBlue Airline Corp.,* the court held that the plaintiff had insufficiently pled the first element of her IIED claim when she suffered alleged racial epithets towards her such as "stupid ass n - - - - -" and was told that " black people are so . . . lazy."  No. 08-40, 2009 WL 273206, at *4, 12 (E.D. La. Jan. 26, 2009).  The court reasoned that the "Fifth Circuit has rejected claims for [IIED] for acts that are of greater outrageous character." *Id.* at 12.

Furthermore, in *Washington v. Mother Works, Inc.*, the court held that the plaintiff could not prevail on her IIED claim when her employers allegedly regularly used racial slurs, ridiculed her for

missing work to care for her cancer-stricken mother, paid her on an hourly basis rather than making her a salaried employee like other managers, accused her of stealing company time, and terminated plaintiff "solely on the basis of race . . . to inflict emotional distress."  197 F.Supp. 2d 569, 572-73 (E.D. La. 2002).  The court explained that "Louisiana courts have repeatedly emphasized that 'conflict in a pressure-packed work environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable'" and that liability "does not extent to mere insults, threats, annoyances, petty oppression, and other trivialities."  *Id.* at 573 (quoting *White*, 585 So.2d at 1205, 1210); *see also Beaudoin v. Hartford Acc. & Indem. Co.,* 594 So.2d 1049, 1050-52 (La. App. 3 Cir. 1992) (holding that a supervisor's alleged eight-month undertaking in which he shouted at the employee, cursed at her, called her names such as "fat", "stupid," and "dumb," commented on the inferiority of women, and falsely accused her of making mistakes did not constitute extreme and outrageous conduct).

The alleged conduct of the Judges, even if true, cannot be considered extreme or outrageous enough to sustain an IIED claim.  Judge Bell's alleged act of kissing Griffith on the forehead, even if meant to intimidate her, is even less extreme and outrageous than the conduct alleged in *Smith*. 298 F.3d at 437-48.  The conduct must be intended to cause more than mere "fright, humiliation, embarrassment, worry, or the like."  *White,* 585 So.2d at 1210.  The  alleged "undue duress" and "psychological and emotional injury" caused by Judge Gray reporting Judge Bell's alleged sexual harassment of Griffith, despite Griffith's "[fear] for the her own and her son's safety" because she believed "it would be dangerous for [her] to publically accuse him of sexual harassment," is also not extreme and outrageous to sustain an IIED claim.  (Rec. Doc. 86 at 79).

This Court finds it perplexing that Griffith would accuse Defendants of allowing "a workplace culture defined by . . . pervasive sexual harassment of . . . employees" to "fester," while

simultaneously suing for IIED resulting from affirmative steps taken by Judge Gray to address this concern.  *Id.* at 80.  Indeed, Griffith concedes that Judge Gray had an ethical judicial obligation to report Judge Bell's conduct to the Judiciary Commission.  (Rec. Doc. 86 at 79; 99-2 at 5, 7).  Griffith's claim that "[e]ven if Judge Gray was bound by judicial ethics to report the alleged misconduct" that "she did so in full knowledge of the impact that it would have on [her] sense of financial and physical well-being both for herself and her child" is without merit.  (Rec. Doc. 86 at 79).  Although Griffith may have possessed some subjective belief that Judge Bell would somehow respond to a sexual harassment complaint with retribution, Judge Gray's dutiful response, even if somehow calculated to cause some degree of mental anguish, cannot be considered so severe as to rise to the level of "outrageous conduct no reasonable person could be expected to endure." *Nicholas,* 765 So.2d at 1027.

Additionally, Griffith's allegations that Judge Gray "exacerbated [her] psychological and emotional injury" by "creating an intolerable workplace environment for [her]" by, among other things, allegedly, throwing checks at her, accusing her of misplacing checks, and accusing her of exceeding her authority do not rise to the level of extreme and outrageous conduct actionable under an IIED claim.  (Rec. Doc. 86 at 79-80).  Judge Gray's conduct was less severe that those of the employer in *Washington*, which the court held were insufficient to prevail in an IIED claim.  197 F.Supp. at 572-73.  This is not a case involving conduct so outrageous and so extreme to be regarded as horrendous, atrocious and "utterly intolerable in a civilized community."  *White,* 585 So.2d at 1209.  This Court concludes that Griffith fails to satisfy the first element of her IIED claim, in that the complained of conduct by the Judges was not extreme and outrageous for purposes of an IIED claim.  *See White,* 585 So.2d at 1209.

In support of her IIED claim Griffith relies primarily on the case of *Taylor v. State* where the

13

court upheld an IIED claim involving a police officer who allegedly commenced a criminal investigation which led to the arrest of a citizen who had filed a suit against the officer.  617 So.2d 1198, 1200-02 (La. App. 3 Cir. 1993); (Rec. Doc. 104-1 at 6).  The court concluded that the officer did not conduct the investigation based upon reasonable suspicion, but rather, for the purpose of discrediting the plaintiff in her lawsuit.  *Id.* at 1204.  The court reasoned that the officer's conduct "indicated a reckless indifference to the likelihood of his actions causing the plaintiff emotional distress." *Id.* at 1205.  However, this case is distinguishable from *Taylor*.  Unlike in *Taylor*, Griffith has not alleged a criminal investigation and arrest at the behest of the defendant.  *Id.* at 1200-02.  Furthermore, Griffith's alleged IIED claim arose in the workplace environment, whereas the plaintiff's claim in *Taylor* did not.  *Id.*  As discussed earlier, Louisiana jurisprudence is clear and consistent that "'conflict in a pressure-packed work environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable.'"  *Washington*, 197 F.Supp. 2d at 572-73 (quoting *White*, 585 So.2d at 1205, 1210).  Therefore, all Griffith's IIED claims must be DISMISSED.

This Court will now address the remaining claims against the remaining parties.


**1.** *State Law Employment Discrimination & Title VII Claims*

Griffith claims that the City violated her rights under Louisiana's Employment Discrimination Law ("LEDL") because she was fired for "no legitimate reason," and that the allegations of incompetence were "mere pretext for discrimination and retaliation."  (Rec. Docs. 86 at 76; 107-1 at 1).  LEDL prohibits intentional discrimination in employment by employers.  La. Rev. Stat § 23:301, *et seq.*  Griffith claims that the City of New Orleans was her employer "because it paid her salary and provided her benefits."  *Id.* at 71.

14

Griffith sues under Title VII for sexual harassment, hostile work environment, and retaliation. (Rec. Doc. 86 at 68-70). LEDL is "similar in scope" to Title VII, and "Louisiana courts have routinely looked to the federal jurisprudence for guidance in determining whether a claim has been asserted." *Plummer v. Marriott Corp.*, 654 So.2d 843, 848 (La. App. 4 Cir. 1995). Title VII provides:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin . . .

42 U.S.C. § 2000e-2(a). As discussed above, Griffith claims that the OPJC and the City of New Orleans were her employers. (Rec. Doc. 86 at 71). Title VII makes it unlawful for an employer to retaliate against an employee who opposes any employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To make a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) that the plaintiff engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Raggs v. Mississippi Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2002).

An employee has engaged in an activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Title VII permits a person claiming to be aggrieved to file a charge with the EEOC alleging the employer's commission of an unlawful employment practice. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). An adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause

of the adverse employment action." *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985).

Griffith has made a *prima facie* showing that (1) she engaged in a protected activity under Title VII by filing an EEO complaint against the Judges and Denet; (2) she was subjected to an adverse employment activity by being terminated; and (3) she has alleged enough facts above a speculative level that a causal link existed between the protected activity of filing her EEO complaint and the adverse employment action of her termination. *See Raggs*, 278 F.3d at 471; (Rec. Doc. 86). Her termination occurred four months after she filed her EEO complaint. The Fifth Circuit has held that "close timing between an employee's protected activity and an adverse action against h[er] *may* provide the causal connected required to make out a prima facie case." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis added). Additionally, Griffith has alleged that other similarly situated employees were not terminated after more significant mistakes than her own, which resulted in her termination. (Rec. Doc. 86 at 73-74). Griffith has alleged "enough facts to state a claim to relief that is plausible on its face" for her retaliatory employment discrimination claims to survive a 12(b)(6) motion to dismiss. *Bell*, 550 U.S. at 570. Therefore, the motions to dismiss Griffith's state and federal employment discrimination claims against the City are DENIED.

### 2. *Section 1983 Claims*

Griffith alleges that the City and Denet and the Judges, in their individual capacities, "violated her constitutional rights to privacy, liberty, and substantive and procedural due process as guaranteed by the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983." (Rec. Doc. 86 at 71). Griffith essentially makes five separate claims: (1) "[N]either the City nor OPJC administrators

16

provided vehicles for [her] (or any similarly situated employees) to seek due process for claims arising out [of] the workplace;" (2) her termination was carried out in violation with OPJC policy, since she had a "reasonable belief and expectation that dismissal w[ould] not take place without notice and hearing;" (3) she was not afforded the same procedural safeguard against adverse decisions affecting her employment as similarly situated City/OPJC employees;" (4) the City and OPJC "negligently hired retained, supervised, failed to discipline and/or entrust . . . Denet in violation of Louisiana Law;" and (5) Judge Bell violated her First and Fourteenth Amendment rights to speak freely against him "without fearing retaliation or harm" as a result of engaging in Constitutionally and statutorily protected activities.  (Rec. Docs. 86 at 75; 114-1 at 3).  This Court will address each Section 1983 claim in turn.

>    42 U.S.C. § 1983 states in pertinent part:
>
>    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To prevail in a Section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived her of a right secured by the Constitution or laws of the United States.  *Martin v. Thomas*, 973 F.2d 449, 452-53 (5th Cir. 1992).   "Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions."  *Mouille v. City of Live Oaks, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992) (citing  *Monell v. Dept. of Soc. Servs,* 436 U.S. 658, 691-95 (1978); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985)).  "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally

17

result in plaintiff's injury." *Id.*  A plaintiff bringing a Section 1983 individual capacity claim against her supervisor must allege "specific conduct and actions giving rise to constitutional violations." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2003) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).  "This standard requires more than conclusory assertions: The plaintiff must allege specific facts giving rise to a constitutional violation."  *Id.* (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).  Mere labels and conclusions, or formulaic recitation of the elements of a cause of action will not suffice.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A government entity that employs a tortfeasor is not itself liable for the tortfeasor's actions under the theories of vicarious liability and *respondeat superior*.  *Id.* (citing *Monell v. City of New York Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Rather, "[m]unicipal liability for Section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy."  *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).   While official policy is ordinarily contained in "duly promulgated policy statements, ordinances, or regulations," it may also be evidenced by "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute custom that fairly represents municipal policy."  *Id.* (citing *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984).  Any policy which allegedly caused constitutional violations "must be specifically identified by a plaintiff, and it must be determined whether [it] is constitutional or unconstitutional."  *Piotrowski*, 237 F.3d at 579-80.  Additionally, "there must be a direct causal link between municipal policy and the constitutional deprivation," i.e., that the policy was the "moving force" behind the violation.  *Id.* (citing  *Monell*, 436 U.S. at 694).

*(1) Lack of Vehicle to Seek Due Process*

18

Griffith alleges that "[n]either the City nor OPJC administrators provided vehicles for [her] (or any situated employees) to seek due process for claims arising out [of] the workplace," including the injuries listed above. (Rec. Doc 86. at 71).  In support of this claim, Griffith alleges that: (1) she sought the aid of the Judiciary Commission when she filed a complaint against Judge Gray, but no investigation was undertaken; (2) she sought the aid of the City's EEO compliance officer, Larry Bagneris, but he did not return her calls; (3) she followed procedure set forth in the OPJC Employee Handbook with respect to Denet's behavior, and asked Judge Gray to intervene between herself and Denet, but received no response.  *Id.* at 71-72.  Taken together, these allegations express only adversarial conclusions by Griffith, rather than municipal policy.  Indeed, these allegations demonstrate that there were in fact vehicles in place for employees to seek relief for workplace issues, even though Griffith found them unsatisfactory in her particular case.  Further, Griffith has failed to allege facts that evidence that there was a constitutional violation perpetrated against her beyond her own conclusions.  Even assuming she was able to prove constitutional harm, she has failed to adequately demonstrate that the City's official policy was the "moving force" behind her alleged deprivations.  *Piotrowski*, 237 F.3d at 579-80.  This Court concludes that Griffith's claims do not afford a basis for finding that the City, through Denet, maintained an official policy or custom that caused Griffith's injuries.  *Monell*, 436 U.S. at 694.

*(2) Wrongful Termination*

The Fifth Circuit has held that a plaintiff cannot bring a Section 1983 claim related to termination from public employment unless she can prove that she had an established property interest in the employment.  *Lollar v. Baker*, 196 F.3d 603, 606 (5th Cir. 1999).  Under Louisiana law, a public employee can have a property interest in their job if: (1) the employer contracted with the employee to fire him only for cause, or (2) the employee is a permanent classified employee

under the Louisiana Civil Service system. *Wallace v. Shreve Mem'l Library,* 79 F.3d 427, 429 (5th Cir. 1996). Louisiana law recognizes a presumption that an individual's employment is "at will" unless there is a specific statutory requirement or the relationship has been altered by either express contract limiting the conditions of termination. La. Civ. Code art. 2747; *Jackson v. E. Baton Rouge Parish Indigent Defender's Bd.,* 353 So.2d 344, 345 (La. App. 1 Cir. 1977). Unclassified public employees may be discharged without cause. *Guillory v. St. Landry Parish Police Jury*, 802 F.2d 822, 825 (5th Cir. 1986). Furthermore, a terminated at-will employee cannot claim any due process protection under the Fourteenth Amendment. *See id.*

Griffith cites the OPJC employee manual to establish her employee status: "[A]ll Court employees, regardless of the source of their salaries, are members of the unclassified service (they are not civil servants) and are hired by and serve at the Judges' pleasure." (Rec. Docs. 86 at 7; 86-1 at 7). The OPJC employee manual also contains an acknowledgment stating, "I fully understand that I have the right to terminate my employment, at any time, for any reason, or no reason, and the [OPJC] has the same right as well." (Rec. Docs. 86 at 7; 86-1 at 7). Griffith claims that the employee manual supports her contention that she was entitled to notice and hearing, yet the manual is devoid of any mention of such pre-termination hearings. (Rec. Doc. 86-1). In fact, the manual mentions a right to appeal only "suspension or demotion" when such action "is not a result of reclassification, reduction in pay, layoff, transfer, or dismissal by the Court." *Id.* at 24. Griffith's mere subjective belief that she was entitled to notice and hearing before termination does not create a property interest in continued employment which is protected by procedural due process. *Perry v. Sindermann*, 408 U.S. 593, 603 (1972). Griffith did not contract with the OPJC to be fired for cause, nor was she a permanent classified employee under the Louisiana Civil Service system. (Rec. Doc. 86); *see* La. Civ. Code art. 2747; *Jackson,* 353 So.2d at 345; *Wallace,* 79 F.3d at 429. This

Court finds that Griffith was an at-will employee who did not have any property rights incidental

to her employment at the OPJC, and therefore, any Section 1983 claim related to her beliefs and

expectations regarding her termination, is DISMISSED.

*(3) Lack of Same Procedural Safeguards Afforded to Similarly Situated Employees*

In her complaint, Griffith alleges that she "was not afforded the same procedural safeguard

against adverse decisions affecting her employment as similarly situated City/OPJC employees."

(Rec. Doc. 86 at 73).  As evidence of the "suspect basis for her termination," Griffith cites to

numerous incidents where she alleges that other similarly situated employees were not terminated

when they committed more egregious errors than she did.  *Id.* at 73-74.  It can be inferred that

Griffith is merely restating her Title VII retaliation cause of action under the flag of Section 1983.

Under Fifth Circuit jurisprudence, a plaintiff may bring both claims.  *See Southland v. Tx. Bd. of*

*Criminal Justice*, 114 F.3d 539, 549-50 (5th Cir. 1997) (citations omitted) (holding that a public

sector employee may assert claims of sexually discriminatory employment practices under both Title

VII and Section 1983 because the Constitution provides a right independent of Title VII to be free

from sexual discrimination by a public employer under the Equal Protection Clause of the

Fourteenth Amendment); see also *Johnson v. Harris County Flood Control Dist.,* 869 F.2d 1565,

1573 (5th Cir. 1989) (holding that a public employee could sue under both Title VII and Section

1983 when he was terminated after he testified in support of a coworker's discriminatory allegations

at an EEO hearing).

Where, as here, the plaintiff brings a Section 1983 claim as a parallel remedy for Title VII

violations, the analysis under the two statutes is the same.  *Patel v. Midland Mem. Hosp. & Med.*

*Ctr.,* 298 F.3d 333, 342 (5th Cir. 2002).  As discussed *supra*, Title VII makes it unlawful for an

employer to retaliate against an employee who opposes any employment practice made unlawful by

Title VII.  42 U.S.C. § 2000e-3(a).  An employee may not be held personally liable for damages under Title VII.  *Grant v. Lone Star Co.,* 21 F.3d 649, 651-52 (5th Cir. 1994); *Indest v. Freeman Decorating, Inc.,* No. 95-16, 1995 WL 366484, at *1 (E.D. La. June 20, 1995) (Clement, J.) ("The law is well-settled in the Fifth Circuit that employees cannot be sued in their individual capacity under Title VII").  Only employers, not individuals acting in their individual capacity, may be held liable under Title VII.  *Grant*, 21 F.3d at 652.  Griffith never alleges that the Judges or Denet were her employers, but rather, that the OPJC and the City of New Orleans were her employers.  (Rec. Doc. 86 at 71).  Therefore, Griffith's parallel Section 1983 claim may proceed only against the City.  As discussed *supra*, Griffith has made a *prima facie* showing of Title VII retaliation as to survive a 12(b)(6) motion to dismiss.  Therefore, using the same analysis, Griffith's parallel Section 1983 claim regarding retaliatory termination also survives.  Accordingly, the motion to dismiss this particular claim is DENIED in part and GRANTED in part.  Griffith may proceed against only the City in this particular claim.  All other parties are dismissed.

### (4) Negligent Hiring/Retention of Denet

Griffith claims that "[the] City and OPJC negligently hired, retained, failed to discipline and/or entrusted . . . Denet in violation of Louisiana Law."  (Rec. Doc. 86 at 76).  This claim fails for multiple reasons.  First, Griffith avers that these actions violate Louisiana law, ignoring the fact that  Section 1983 claims must pertain to violations of federal law or laws under the Constitution.  *See Martin,* 973 F.2d at 452-53.  Second, even if Griffith was alleging that such actions violated the Constitution or federal law, she has neglected to provide any argument in support of this claim in any of her briefs, or even to provide and discuss the *prima facie* elements for negligent hiring/ retention claims.  Since "[i]nadequately briefed issues are deemed abandoned," this Court will not consider this issue.  *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006).  Accordingly, this

particular Section 1983 claim is DISMISSED.

*(5) Judge Bell Violated Griffith's First and Fourteenth Amendment Rights*

Griffith alleges that Judge Bell violated her First and Fourteenth Amendment rights to speak freely against him "without fearing retaliation or harm" as a result of engaging in Constitutionally and statutorily protected activity.  (Rec. Doc. 114-1 at 3).   The protected activity Griffith refers to is her April and May 2010 testimony before the Judiciary Committee regarding Judge Gray's complaint against Judge Bell alleging he sexually harassed Griffith.  (Rec. Doc. 86 at 28-29, 30). In this claim, Griffith alleges two specific events.  The first is a June 2010 anonymous email message sent to OPJC employees stating among other things that "Ms. Griffith had destroyed Judge Bell and that she would destroy others to keep her job."  (Rec. Doc. 86 at 33).  The second is an alleged physical act on the part of Judge Bell when on June 1, 2010, after Griffith had recently testified against Judge Bell for sexual harassment, he walked into Griffith's office "and without saying a word kissed her on her forehead and walked out." *Id.* at 32.  Griffith claims that this action was deliberately designed to intimidate her. *Id.*  As to the first allegation, Griffith has provided no evidence beyond her own conclusions that Judge Bell actually sent the office email.  This allegation is purely speculative. *See Bell*, 550 U.S. at 555.

The second allegation against Judge Bell also fails to rise to a level actionable under Section 1983.  A plaintiff invoking a Section 1983 claim must show some "tangible adverse action" taken by the defendant. *Norwood v. City of Hammond*, 2003 WL 1090253, at *3 (E.D. La. Mar. 11, 2003). The alleged "tangible adverse action" must do injury to a constitutionally guaranteed right." *Colson v. Grohman*, 174 F.3d 498, 514 (5th Cir. 1999).  "Mere threatening language or gestures of a state official, do not, even if true, amount to constitutional violations." *Norwood,* 2003 WL 1090253, at *2.  "Citizens do not have a constitutional right to courteous treatment by the State." *Id.* (citing

*Robertson v. Plano City of Texas*, 70 F.3d  21, 24 (5th Cir. 1995)).  Here, Griffith's allegations of tangible and adverse action by Judge Bell in violation of her constitutional rights involve the "threatening gesture" of him kissing her on her forehead.  (Rec. Doc. 86 at 32); *Norwood* 2003 WL 1090253, at *2.  As with the first allegation, this allegation does not  rise above a speculative level nor are sufficient to state a claim to relief that is plausible on its face.  *See Norwood* 2003 WL 1090253, at *2; *Bell,* 550 U.S. at 555, 570.   Therefore, this particular Section 1983 claim is DISMISSED.

## III. <u>CONCLUSION</u>

Accordingly,

IT IS ORDERED that Defendants' Motions to Dismiss (Rec. Docs. 97; 98; 99; 101; 105) are GRANTED in part and DENIED in part.  The Motions to Dismiss are DENIED with respect to Griffith's state and Title VII retaliatory discrimination claims and parallel Section 1983 claim against the City.  The Motions to Dismiss are GRANTED with respect to all remaining parties and claims.

IT IS FURTHER ORDERED that Griffith is not permitted any further amendments to her complaint.

New Orleans, Louisiana, this 10th day of August, 2011.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**