UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TAMMY GRIFFITH & STACEY GUICHARD | CIVIL ACTION |
|---|---|
| VERSUS | NO: 11-245 C/W 11-535 |
| CITY OF NEW ORLEANS, ET AL. | SECTION: "A" (1) |

## ORDER AND REASONS
**[REF: All cases]**

Before the Court is a **Motion for Reconsideration of Defendant's Motion for Summary Judgment (Rec. Doc. 269)** filed by the City of New Orleans. Plaintiffs Tammy Griffith and Stacey Guichard oppose the motion. The motion, scheduled for submission on November 21, 2012, is before the Court on the briefs without oral argument. For the reasons that follow, the City's motion is GRANTED.

### I.  Background

This case arises out of gender-based discrimination and harassment by former Orleans Parish Juvenile Court Judge David Bell, and other retaliatory conduct by the remaining judges on the court.

On November 2, 2012, this matter was reassigned to this Court following the prior district judge's recusal. (Rec. Doc. 277). Significant motion practice had occurred before the case was reassigned and the trial date was imminent. Upon reallotment

1

of the case to this Court, the City of New Orleans was the sole remaining defendant in the case.  Each plaintiff has one remaining claim in the case:  retaliatory discharge for Ms. Griffith and constructive discharge for Ms. Guichard.[1]

On October 15, 2012, the prior judge denied the City's motions for summary judgment (Rec. Docs. 215 & 216) in their entirety.  (Rec. Doc. 260).  The memoranda in support of those motions included a single paragraph, without citation to any legal authority, challenging the assertion that the City employed the Plaintiffs.  (Rec. Doc. 215-1, at 15; Rec. Doc. 216-1, at 11).  The City later filed the instant motion for reconsideration (Rec. Doc. 269) in which it challenges many aspects of the denial of its motion for summary judgment.  At a status conference held on December 4, 2012, the Court advised the parties that it would take up the motion for reconsideration solely as to the legal question of whether the City employed the Plaintiffs and therefore whether Plaintiffs have a cause of action against the sole remaining defendant.[2]  (Rec. Doc. 293).  Plaintiffs were

---

[1] The parties' briefing suggests that they do not necessarily agree as to the breadth of the prior district judge's dispositive rulings.  This is not problematic, however, because what is clear is that the City is the only defendant left standing in the case.  And if the City's arguments challenging employer status are meritorious, then the City will be entitled to judgment as a matter of law regardless of the legal theory supporting Plaintiffs' claims.

[2] The prior district judge had summarily rejected the City's arguments without written reasons.  (Rec. Doc. 260).

later given leave to file a supplemental opposition memorandum so that they could focus their arguments on the sole issue being taken up on reconsideration. (Rec. Doc. 297).

## II. Discussion

### *The Parties' Positions*

The City argues that Plaintiffs' contention of dual employment by the City and Orleans Parish Juvenile Court ("OPJC")[3] is factually and legally incorrect. The City argues that the pertinent state statutes and case law confirm that OPJC is a state agency, that the judges of OPJC are state employees, and that the Plaintiffs who served at the pleasure of the judges were also state employees. The City argues that the fact that the City was statutorily required to pay Plaintiffs' salaries and benefits does not make them City employees.

On the other hand, Plaintiffs' position throughout this litigation has been that the integrated enterprise or joint employer doctrine discussed in Trevino v. Celanese Corp., 701 F.2d 397 (5th Cir. 1983), applies in this case to render the City liable for any unlawful discrimination that Plaintiffs suffered at the hand of OPJC judges and employees. Plaintiffs contend that they have introduced into the record voluminous documents showing that the City of New Orleans, not the State of Louisiana,

---

[3] It has already been determined that the OPJC is not a juridical entity capable of being sued. (Rec. Doc. 139, at 8-9, Order and Reasons dated 8/10/11).

3

made final decisions regarding employment matters relating to them. (Rec. Doc. 297, at 3).

*Analysis*

It is clear that under state law the judges of the OPJC are state employees. The OPJC is a creature of the Louisiana constitution and state statutory law. La. Const. art. 5, § 32; La. R.S. § 13:1566. Pursuant to the state constitution, the judges of the OPJC exercise the judicial power of the state, La. Const. art. § 1, and the Louisiana Supreme Court has sole authority to place temporary or ad hoc judges on the state's juvenile courts, id. § 5(A). The jurisdiction of juvenile and family courts is governed by the laws passed by the state legislature. La. Const. art. § 18. A host of state statutes govern the operations of the OPJC. See, e.g., La. R.S. §§ 13:691, 1566, 1568, 1587.1, 1587.2. The Louisiana Supreme Court has specifically recognized that the OPJC is a state agency. Sicard v. City of New Orleans, 184 So. 2d 21 (La. 1966); see also City of New Orleans v. State of Louisiana, 426 So. 2d 1318 (La. 1983), rejected in part on other grounds, City of New Orleans v. Bd. of Comm'rs, 640 So. 2d 237 (La. 1994); La. Atty Gen. Op. No. 86-301, 1986 WL 236706. The judges of OPJC are state office holders who exercise their authority pursuant to the state constitution and state statutory law. See Hryhorchuk v. Smith, 390 So. 2d 497 (La. 1980); Quarles v. Jackson Parish Police Jury,

752 So. 2d 833 (La. App. 2nd Cir. 1986). As such, the City of New Orleans has no legal right to control the judges of the OPJC in any manner. See id. The OPJC is not a creature of local law.

Further, the Court could find no decision to support the legal conclusion that staff employees of a state judicial clerk's office--as opposed to the judges on the court--are anything other than state employees. See, e.g., Glover v. Hester, No. 09-978, 2011 WL 1467642 (W.D. La. Apr. 18, 2011); Thibodeaux v. Arceneaux, 618 F. Supp. 24 (W.D. La. 1984); City of New Orleans, 426 So. 2d at 1318; Cosenza v. Parish of Rapides, 341 So. 2d 1304 (La. App. 3d Cir. 1977); Sicard, 184 So. 2d at 21.[4] Simply, there is no support for the suggestion that the clerks and staff that the judges hire, fire, and supervise are local employees even though the judges are clearly state employees. Neither the

---

[4] The Court's research did uncover Morgan v. Laurent, 948 So. 2d 282 (La. App. 5th Cir. 2006), in which a Louisiana appellate court concluded that issues of fact precluded judgment as a matter of law on the question of whether a law clerk for the Second Parish Court for the Parish of Jefferson was a parish or state employee. The issue of fact in Morgan derived from conflicting affidavits submitted by parish personnel who attempted to offer a legal opinion as to whether the parish or state employed the law clerk. This case is an outlier.
  Additionally, via La. R.S. § 42:1441.3 the legislature has statutorily provided factors to guide the determination of who is the master of an appointed public employee for purposes of vicarious liability. See Johnson v. City of Pineville, 924 So. 2d 443, 445 (La. App. 3d Cir. 2006). Those factors are: 1) source of hiring, 2) supervision or right of control, 3) power to discipline, and 4) source of wages. La. R.S. § 42:1441.3(C). For reasons explained later in this opinion, none of these factors militate in favor of finding that the City was an employer in this case.

5

judges nor their support staff are employees of the City.

That legal question being answered under *state* law, the Court's analysis can now proceed to whether sufficient evidence exists to at least create an issue of fact as to whether the City of New Orleans became the joint employer under *federal* law so as to render the City liable for the alleged harassment and retaliation. Even though employer status is typically a question of law, the question of whether an entity like the City, which was not Plaintiffs' employer under state law, can be considered a joint employer under the Fifth Circuit's <u>Trevino v. Celanese Corp.</u> decision, is extremely fact-driven.

The Court, having reviewed the evidence of record that Plaintiffs reference in their memoranda in opposition, is persuaded that Plaintiffs' joint employer allegation suffers on two fronts. First, there is no evidence that employees of the City of New Orleans--again, not OPJC clerk's office employees who Plaintiffs contend are City employees but actual City employees such as Ms. Bagneris[5]--exercised any control whatsoever over Plaintiffs' employment. The City exercised no control over hiring, firing, supervision, discipline, or any aspect of Plaintiffs' work activities. All of this was governed first and foremost by the judges of the OPJC, and to some extent by the

---

[5] Ms. Courtney Bagneris was the City's Assistant Chief Administrative Officer and Plaintiffs intended to call her as a witness at trial.

staff at the court, all of whom were answerable to the judges. The relevant cases demonstrate that control is the single most important aspect of any determination as to whether a municipality bears responsibility for the actions of a public employee. See, e.g., Glover, 2011 WL 1467642; Johnson, 924 So. 2d at 443; Barnum v. City of New Orleans, No. 04-3531, 2005 WL 3541068 (E.D. La. Dec. 5, 2005); Hryhorchuk, 390 So. 2d at 497.

And perhaps most importantly, control and active involvement in employment decisions were the driving forces behind the Fifth Circuit's Trevino decision. In Trevino, there was evidence that the plaintiffs' actual employer was not acting alone in making employment decisions. Rather, managers for a second company were actively involved in decisions to hire, fire, lay-off, promote, and transfer employees, and aggrievement over these actions is what formed the basis of the lawsuit. Trevino, 701 F.2d at 400. As part of Trevino the Fifth Circuit articulated several factors to consider when determining whether distinct entities constitute an integrated enterprise: 1) interrelation of operations, 2) centralized control, 3) common management, and 4) common ownership or financial control. 701 F.2d at 404 (citing Baker v. Stuart Broad. Co., 560 F.2d 389, 391-92 (8th Cir. 1977)). In this case there is no evidence that the City participated in court operations and the only evidence of centralized control points to the judges of the court, who were not City employees.

7

There is likewise no evidence of common management between the OPJC and the City.

Plaintiffs point to the fact that the City was in control of pay raises and benefits as evidence of a joint employment relationship. In other words, Plaintiffs suggest that the City exercised financial control over the OPJC. But this argument is unavailing because the City is mandated under state law to pay the salaries and expenses of the OPJC.[6] See La. R.S. §§ 691, 1566, 1568, 1587.1, 1587.2. The State's Attorney General has specifically opined that a city does not automatically become the "master" of a court employee simply because it pays her salary. La. Atty Gen. Op. No. 98-34, 1998 WL 233349. And the courts facing the issue have readily recognized that a city's fulfillment of its statutory payment obligations for court personnel do not change employer status in the absence of some indicia of control. See, e.g., Glover, 2011 WL 1467642; see also Sicard, 184 So. 2d at 22 (holding that state law makes the City responsible for paying worker's compensation benefits for an employee of the OPJC, even though OPJC is a state agency).

Plaintiffs also point out that the OPJC Employee Manual expressly stated that the OPJC would follow the City's personnel policies. (Rec. Doc. 207-31, Plaintiffs' Exh. 27, at 4). This

---

[6] In City of New Orleans v. Sate of Louisiana, 426 So. 2d at 1318, the City challenged the constitutionality of this mandate and lost.

decision was apparently made by the judges of the Court. But the judges' decision to follow the City's personnel policies in light of the fact that the City was paying the court's expenses--again as mandated by state statute--does not constitute control by the City. In other words, even if the judges of the OPJC required their staff to follow the City's personnel policies, there is no evidence that the City was making hiring, firing, and other such employment decisions regarding the court's staff members.

But even more troubling, and herein lies the second insurmountable problem with Plaintiffs' attempt to rely on the joint employer theory to hold the City liable, is that the specific actors who committed the acts that Plaintiffs alleged harmed them, were the judges on the court, and to a lesser extent Ms. Pernell Denet, the Judicial Administrator for the OPJC. There is no dispute but that the City did not exercise control over the judges of the court, and the Court has seen no evidence that Ms. Denet's actions were controlled by the City. Thus, even if one were to conclude that the City could be considered a joint employer of Plaintiffs, they are attempting to hold the City liable for discrimination by actors over which it had no control. Clearly, the state's funding mandate made the OPJC financially dependent on the City and it made the OPJC employees part of the City's benefit system. Without doubt, the OPJC and the City were interrelated as to some employment matters, but Trevino does not

support the notion of imposing monetary liability on an interrelated entity with no control whatsoever over the offending actors.  Even a quick reading of Trevino reveals that the court looked to the joint employer doctrine because it was the managers of the interrelated second company who were involved in making the adverse employment decisions that formed the basis of the lawsuit.  In this case, Plaintiffs cannot rely upon Trevino to make the City liable for the actions of those individuals over whom it had no control whatsoever.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that **Motion for Reconsideration of Defendant's Motion for Summary Judgment (Rec. Doc. 269)** filed by the City of New Orleans is **GRANTED**.  Plaintiffs' complaints are dismissed with prejudice as to the City of New Orleans.

January 28, 2013

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE