UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMMY GRIFFITH & STACEY GUICHARD | CIVIL ACTION |
| VERSUS | NO: 11-245 C/W 11-535 |
| CITY OF NEW ORLEANS, ET AL. | SECTION: "A" (1) |

**ORDER AND REASONS**
**[REF: All cases]**

The following motions are before the Court: **Motion to Amend Complaint (2ⁿᵈ Amended Complaint) (Rec. Doc. 306), Motion to Reconsider Prior [Dismissals] (Rec. Doc. 307), and Motion to Reconsider (Rec. Doc. 308)** filed by Plaintiffs Tammy Griffith and Stacey Guichard. All motions are opposed. The motions, scheduled for submission on March 27, 2013, are before the Court on the briefs without oral argument.[1]

## I.  Background

This case arises out of allegations of gender-based discrimination and harassment by former Orleans Parish Juvenile Court Judge David Bell, and other alleged retaliatory conduct by the remaining judges on the court.

On November 2, 2012, this matter was reassigned to this Court following the prior district judge's recusal. (Rec. Doc. 277). Significant motion practice had occurred before the case was reassigned and the trial date was imminent. Upon reallotment of the case to this Court, the City of New Orleans was the sole remaining defendant in the case. Each plaintiff had one remaining claim in the case: retaliatory discharge for Ms. Griffith and constructive

---

[1] David Bell has requested oral argument but the Court is not persuaded that oral argument would be helpful in light of the issues presented.

1

discharge for Ms. Guichard.[2] Although Plaintiffs had sought relief under numerous legal theories, the only ones that had survived dismissal were Plaintiffs' Title VII claims, Louisiana Employment Discrimination Law ("LEDL") claims, and what the prior district judge had deemed to be parallel (to Title VII) § 1983 claims. (Rec. Docs. 139 [11-245]; 108 [11-535]).

On October 15, 2012, the prior judge denied the City's motions for summary judgment (Rec. Docs. 215 & 216) in their entirety. (Rec. Doc. 260). The memoranda in support of those motions had included a single paragraph, without citation to any legal authority, challenging the assertion that the City employed the Plaintiffs. (Rec. Doc. 215-1, at 15; Rec. Doc. 216-1, at 11). The City later filed a motion for reconsideration (Rec. Doc. 269) challenging many aspects of the denial of its motions for summary judgment but in particular the prior judge's implicit rejection of the City's contention that it did not employ Plaintiffs. At a status conference held on December 4, 2012, this Court advised the parties that it would take up the motion for reconsideration solely as to the legal question of whether the City employed Plaintiffs, and therefore whether Plaintiffs could maintain their causes of action against the sole remaining defendant. (Rec. Doc. 293). Plaintiffs were later given leave to file a supplemental opposition memorandum so that they could focus their arguments on the sole issue being taken up on reconsideration. (Rec. Doc. 297).

On January 28, 2013, the Court entered its Order and Reasons granting the City's

---

[2] The Court notes that both Griffith and Guichard alleged hostile work environment claims under Title VII. Those claims were not specifically addressed in the prior judge's rulings on the motions to dismiss, either with respect to Title VII claims against the employer or with respect to § 1983 claims against David Bell individually. The Court is persuaded that the allegations in the complaint regarding Bell's workplace conduct are sufficient to state a claim under Title VII for creation of a hostile working environment. To the extent that Plaintiffs allege that Chief Judge Gray created a "hostile" work environment because she did not adhere to the civility code that Plaintiffs believe should govern the workplace, these complaints are not actionable.

motion for reconsideration on the employment status issue. (Rec. Doc. 300). On the same day the Court entered an order giving Plaintiffs a window of opportunity to move to amend their pleadings in light of the ruling granting summary judgment in favor of the city of New Orleans. (Rec. Doc. 301). The Court gave Plaintiffs the option to amend, not for the purpose of revisiting all of the prior judge's dismissals, but rather to allow Plaintiffs to properly identify the correct defendant(s) for their remaining claims. The Court believed this course of action necessary as a matter of fundamental fairness given that this Court's ruling had effectively left Plaintiffs without an employer on the eve of trial—the prior judge had previously dismissed the State of Louisiana and Orleans Parish Juvenile Court ("OPJC") as defendants and *prospectively* denied both Plaintiffs the opportunity to further amend their complaints. Adding to the Plaintiffs' prejudice was the fact that the City did not balk at its status as employer until trial was imminent. Contrary to arguments presented by various defendants in opposition to Plaintiffs' motions sub judice, neither the law of the case doctrine nor issues of finality preclude this Court from revisiting the prior dismissals or orders.[3]

## II. Discussion

### *Motion to Reconsider (Rec. Doc. 308)—City of New Orleans*

Plaintiffs move the Court to reconsider its recent ruling granting summary judgment in favor of the City of New Orleans (Rec. Doc. 300). The State of Louisiana, which itself

---

[3] The prior dismissals were interlocutory orders that were never the subject of a final judgment. That they were dismissals with prejudice does not alter their interlocutory nature. Therefore, the Court has inherent power to modify or rescind those orders at anytime prior to entry of a judgment. *See* Fed. R. Civ. Pro. 54(b). Moreover, the law of the case doctrine does not bar a transferee judge from modifying the interlocutory orders of a transferor judge. But in doing so, the transferee judge must exercise his discretion in such a way as to strike the balance between maintaining stability and reaching the correct result. *See Stoffels v. SBC Comm., Inc.*, 677 F.3d 720, 728 n.3 (5th Cir. 2012).

hopes to remain a *dismissed* defendant in this lawsuit, ardently supports Plaintiffs' position with respect to the City.

Plaintiffs' Motion to Reconsider the Court's ruling with respect to the City of New Orleans is DENIED. The motion to reconsider is for the most part a rehashing of the same arguments that Plaintiffs originally made in opposition to the City's motion for summary judgment. Nonetheless, the Court believes it important to address two arguments that Plaintiffs' make in support of their motion.

First, Plaintiffs urge the Court to apply a type of judicial estoppel to the City of New Orleans based upon the City's prior acquiescence to Plaintiffs' contention that the City was their employer. Moreover, Plaintiffs point to affirmative representations by the City or its employees that purport to concede employer status.

Judicial estoppel applies where a party tries to contradict in a second lawsuit his sworn statement in previous litigation. *Grant v. Lone Star Co.*, 21 F.3d 649, 651 n.2 (5th Cir. 1994). It is intended to protect the integrity of the judicial process, avoid inconsistent results, and prevent litigants from playing fast and loose in order to secure an advantage. *Id.* (*citing United States ex rel. AM. Bank v. C.I.T. Constr.*, 944 F.2d 253, 258-59 (5th Cir. 1991); *Brandon v. InterFirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). In this case, the City raised the issue of employer status in its timely-filed motions for summary judgment (Rec. Docs. 215 & 216) before the prior judge and the issue is listed as a contested question of law in the pre-trial order (Rec. Doc. 262). The City then re-raised the issue in its subsequent motion to reconsider, which this Court agreed to hear in the exercise of its discretion. Thus, judicial estoppel does not apply in this case as a means to tag the City of New Orleans with financial responsibility for damages, that if proven, will have been sustained at the hands of state court judges.

Second, Plaintiffs contend that for purposes of their state law employment discrimination claims they were employees of the City. In their prior briefing in opposition (Rec. Docs. 270 & 297) to the City's motion to reconsider, Plaintiffs did not distinguish between employer status for the Title VII and LEDL claims, and therefore the Court made no such distinction in its ruling. While the parties had previously been content to meld the Title VII and LEDL claims,[4] the Court is persuaded that the issue of employer/employee status merits separate consideration under the two schemes.

### 1. *Title VII Claims*

Title VII prohibits an employer from discriminating against an employee based on gender and from retaliating against an employee for seeking to vindicate rights conferred by Title VII. *See* 42 U.S.C.A. § 2000e-2(a); 42 U.S.C.A. § 2000e-3(A). Title VII defines an employer as a "person in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 2000e(b). A person "includes one or more individuals, governments, governmental agencies, [or] political subdivisions." *Id.* § 2000e(a). The term "employee" means "an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof . . . ." 42 U.S.C.A. § 2000e(f). Title VII lacks statutory guidance on the question of who qualifies as an employee because "[w]ith magnificent circularity, Title VII defines an employee as 'an individual employed by an employer.'" *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986) (*quoting* 42 U.S.C. § 2000e(f)).

---

[4] Louisiana courts rely upon Title VII standards when addressing LEDL claims, *see Plummer v. Marriott Corp.*, 654 So. 2d 843 (La. App. 4th Cir. 1995), and for this reason litigants often restrict their briefing to Title VII law even though they are pursuing parallel state law employment claims.

This circuit has long-recognized that the question of employer/employee status under Title VII is a question of federal law "to be ascertained through consideration of the statutory language of the [Civil Rights] Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 226 (5th Cir. 2004) (*quoting Broussard*, 789 F.2d at 1159-60), *rev'd on other grounds*, 546 U.S. 500 (2006). Courts in this circuit determine "employee" status for Title VII purposes by applying the hybrid economic realities/common law control test adopted in this circuit in *Mares v. Marsh*, 777 F.2d 1066, 1067-68 (5th Cir. 1985). *Id.* Although other factors are relevant, the most important factor is "the extent of the employer's right to control the "means and manner of the worker's performance." *Id.* (*quoting Bloom v. Bexar County Tex.*, 130 F.3d 722, 726 (5th Cir. 1997)). Even though federal law controls whether a person is an employer or employee under Title VII, courts can look to state law to understand the nature of the employment relationship. *Oden v. Oktibbeha County*, 246 F.3d 458, 465 (5th Cir. 2001) (*citing Calderon v. Martin County*, 639 F.2d 271, 273 (5th Cir. Unit B 1981)).

When Plaintiffs' case was assigned to this Section, discovery vis à vis the City was concluded. Yet as the Court previously explained when granting the City's motion for reconsideration, none of the evidence in this case suggests that the City of New Orleans exercised any control whatsoever with respect to Plaintiffs' employment. (Rec. Doc. 300). Plaintiffs reported either directly or indirectly to the judges of the OPJC, and it is an undisputed fact in this case that Plaintiffs served solely at the pleasure of the judges of that court. Plaintiffs were employed to provide support services to the judges of the OPJC not to the City. Neither the mayor, the city council, nor or any other official employed by the City exercised or had the right to exercise control over any aspect of Plaintiffs' employment—all aspects of Plaintiffs' employment were controlled by the judges of the OPJC.

6

That said, for purposes of their Title VII claims, Plaintiffs continue to attach undue weight to the fact that the City paid Plaintiffs' salaries. But as the Court previously explained when granting the City's motion for reconsideration, the City paid Plaintiffs' salaries pursuant to a statutory state law mandate that requires Orleans Parish to fund the OPJC. The City did not obtain the right to control employment decisions or to demand services rendered in return for that funding. This situation is not unheard of when a public employer is involved. For example in *Oden v. Oktibbeha County*, the Title VII plaintiff was a sheriff's deputy who had been denied a promotion. 246 F.3d at 461. The deputy sued the county and the sheriff, in both his individual and official capacities, under Title VII for race discrimination. The jury returned a verdict in the plaintiff's favor and all three defendants were cast in judgment. *Id.* at 462.

The crucial issue on appeal in *Oden* for purposes of the cases sub judice was whether the county could be liable under Title VII, *i.e.*, whether the county was the Title VII employer. In *Oden* the county funded the sheriff's office and even exercised oversight over the sheriff's budget but the county exercised no authority concerning promotions within the sheriff's office. 246 F.3d at 465. The sheriff was solely responsible for hiring, promoting, and establishing his deputies' wages. Because the sheriff was the elected official who made all decisions concerning promotions within his department, the sheriff in his official capacity was the deputy's employer for Title VII purposes. *Id.* The county, which funded and budgeted for the sheriff's office but exercised no control over employment decisions, was not the Title VII employer. *Id.*; *see also United States v. Matagorda County*, 181 F. Supp. 2d 673, 679-80 (S.D. Tex. 2002) (concluding that the county that paid the plaintiff was not the employee because the elected sheriff exercised all control with respect to employment). As in *Oden*, Plaintiffs herein are trying to transform a public entity with no employment-related

decision making authority into their Title VII employer based solely on funding obligations. *Oden* is clear authority for the proposition that payment of salaries, and even budget oversight authority, are insufficient in the absence of control to render the City liable under Title VII.

Another problem with Plaintiffs' and the State's position regarding the City is that these parties continue to apply the term "employer" as that term is understood in layman's terms as opposed to Title VII, which makes the status of the judges themselves crucial to the analysis. The OPJC is not an agency of the City, and the judges of the OPJC are not City employees. The Court explained this in great detail in its prior ruling and neither Plaintiffs nor the State has impugned that conclusion because the state law authorities that the Court cited allow for no other conclusion.[5] Turning a blind eye as to the status of the OPJC judges is problematic under Title VII because as the Court previously explained, the OPJC judges are the persons who made and carried out the employment decisions being challenged and/or potentially created a sexually hostile work environment. Principles of various liability are the bedrock of Title VII, which is why the "employer," not the offending employee, is the potentially liable party under Title VII. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999). Employers are liable under Title VII in accordance with common law agency principles, for the acts of their employees. *Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir. 1996) (*citing Moham v. Steego Corp.*, 3 F.3d 873, 876 (5th Cir. 1993)). Moreover, regarding the claims of sexual harassment against David Bell, Bell unarguably qualified as a supervisor with immediate or higher authority over Plaintiffs, so not being subject to individual liability under Title VII, the corporation or entity for which

---

[5] The Court notes that the OPJC judges' official letterhead includes the seal of the State of Louisiana. (Rec. Doc .210-51). Meanwhile, the mayor's staff's letterhead includes the seal of the City of New Orleans. (Rec. Doc. 210-9 & 210-79).

he served as the proxy will be potentially liable under Title VII. *See Ackel v. Nat'l Comm., Inc.*, 339 F.3d 376 (5th Cir. 2003). But the judges of the OPJC are not proxies for the City of New Orleans and no party can point to any law to plausibly suggest otherwise. Thus, in the respondeat superior-laden scheme of Title VII, the City cannot be liable as Plaintiffs' employer for any Title VII violations that Plaintiffs suffered as a result of conduct on the part of any judge of the OPJC. In other words, **for purposes of Title VII**, the City of New Orleans is not Plaintiffs' "employer." The motion to reconsider is therefore DENIED as to the Title VII claims against the City.[6]

### 2. *Louisiana Employment Discrimination Law Claims*

Plaintiffs' discrimination claims under Louisiana law must be considered separately because even though Louisiana courts look to federal standards when determining liability, the Louisiana legislature chose to deviate from Title VII when defining the term "employer." The definition of an "employer" for purposes of an LEDL is narrower than the Title VII definition and it provides in relevant part:

> "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state **receiving services from an employee and, in return, giving compensation of any kind to an employee**. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

La. Rev. Stat. Ann. § 23:302(2) (2010) (emphasis added). An "employee" is an individual

---

[6] This Court would have also dismissed the parallel § 1983 claims against the City that were preserved under the prior rulings. Under § 1983 a municipality is not vicariously liable for the constitutional torts of any of its employees, which is really a moot point because the OPJC judges were not City employees. Thus, the fatal problem with the § 1983 claim against the City is that *Monell* requires that the alleged constitutional violation have occurred as a result of a policy of the municipality. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But in this case, the injuries that Plaintiffs complain about occurred at the hands of the judges of the OPJC, none of whom acted pursuant to a policy of the City of New Orleans.

employed by an employer. *Id.* § 23:302(1).

Even though Louisiana law normally applies a right to control test for determining employer-employee relationship, in order to be an employer for purposes of the LEDL one must 1) receive services from an employee, and 2) in return give compensation to that employee. *Dejoie v. Medley*, 9 So. 3d 826, 830 (La. 2009). Moreover, for purposes of the LEDL, the source of the funds is crucial to determining whether a given defendant is the plaintiff's employer for purposes of the LEDL. *Id.* at 831. The Louisiana Supreme Court's decision in *Dejoie* makes clear that entity whose agent effected the adverse employment decision, and received the plaintiff's services, will not be the plaintiff's employer for purposes of the LEDL if that entity did not fund the plaintiff's compensation. Thus, "employer" status under the LEDL stands in stark contrast to the same term under Title VII.

Plaintiffs' reliance on *Dejoie* in support of their argument that they were City employees is misplaced. *Dejoie* may preclude employer status where an entity does not fund the plaintiff's compensation, but it does not stand for the converse proposition that the entity that pays for compensation is *ipso facto* the LEDL employer. Under the LEDL, an entity is not an employer unless it pays compensation *and receives services from the employee in return*. La. R.S. § 23:302(2).

In this case, both Plaintiffs were hired by the OPJC to provide services to that state agency and to the State's judges on that court. The work that they performed was for the court, not the City. Plaintiffs can point to no specific services that they provided to the City in return for compensation but they assert that the City clearly receives benefits from OPJC because of all the troubled youth in the local community. (Rec. Doc. 308-1 at 4). The local community surely benefits from the existence of the OPJC just as it surely benefits from the federal court in this district. But the LEDL requires compensation in exchange for services

rendered by the individual seeking recovery and in this case Plaintiffs provided no services to the City of New Orleans.[7] This case is similar to *Dejoie* in that it presents a scenario where Plaintiffs have no employer that they can sue for violations of the LEDL.[8] The motion to reconsider is therefore DENIED as to the LEDL claims against the City or any of the other defendants.

### *Motion to Reconsider Prior [Dismissals] (Rec. Doc. 307)—Title VII*

In reconsidering prior dismissals pertaining to the issue of the Title VII employer, the Court begins with two ground rules: 1) the City of New Orleans was not Plaintiffs' employer or joint employer for purposes of Title VII, and 2) given the broad, remedial nature of Title VII, Plaintiffs do in fact have a Title VII employer. This Court is persuaded, for the reasons it gave when it granted the City's motion to reconsider and for the additional reasons given above, that Plaintiffs' employer *for purposes of Title VII* is the State in one of its many forms—either the State of Louisiana, or if not the State proper, the OPJC, as an agency of the State of Louisiana, which it unarguably is, or the judges of the OPJC in their official capacities, *see Oden*, 246 F.3d at 465 (recognizing that the plaintiff's employer for purposes of Title VII was the sheriff in his official capacity). All of these defendants were named in Plaintiffs' complaint. Therefore, the motion to reconsider the prior dismissal of defendants David Bell, Ernestine Gray, Tammy Stewart, Mark Doherty, Lawrence Lagarde, Tracey Flemings-Davillier, and Candace Bates Anderson (Rec. Doc. 307) *in their official capacities*

---

[7] In *Dejoie*, the State had not contested the services aspect of LEDL employer status so the majority did not address the issue of whether the State received plaintiff's services. 9 So. 3d at 830 n.4 & 832. However, Chief Justice Johnson, who believed that the State was the plaintiff's LEDL employer, explained why the plaintiff, who provided services to a state court judge, provided services to the State. 9 So. 3d at 833 (Johnson, C.J., dissenting).

[8] Justice Victory noted in his dissent that a situation may very well arise where the plaintiff has no employer under the LEDL and therefore can never sue anyone for discrimination under state law. *Dejoie*, 9 So.3d at 833 (Victory, J., dissenting).

*only* as judges of the OPJC is GRANTED as to the Title VII claims. The motion is likewise GRANTED as to the State of Louisiana and the OPJC, as an agency of the State of Louisiana, again as to the Title VII claims only.[9]

### *Motion to Amend Complaint (2nd Amended Complaint) (Rec. Doc. 306) and Motion to Reconsider Prior [Dismissals] (Rec. Doc. 307)—§ 1983*

The motion to file the Second Amended complaint (Rec. Doc. 306) is GRANTED to the extent that Plaintiffs are relying on this amended version of their complaint to clarify the Title VII employer issue that the Court addressed above, and to the extent that they are now expressly invoking equal protection as a Fourteenth Amendment violation for purposes of a parallel § 1983 claim.[10] The Second Amended complaint does not provide a basis to reconsider the prior judge's ruling as to the state law tort claims against any individual defendant so those claims remain dismissed. Thus, the sole issue that remains for consideration is what effect the Second Amended complaint has on the § 1983 claims against the judges of OPJC in their individual or personal capacities.

Title VII does not subsume a § 1983 cause of action when a public employer's conduct

---

[9] The Court does not suggest that all of these defendants must be in the case, only that the State in one of its forms is the employer for purposes of Title VII. The Court is aware of the various other decisions, although none controlling or specifically involving OPJC, that have found that similar court entities lack capacity to be sued. But this Court cannot dismiss *Beevers v. Jefferson Parish Juvenile Court*, 552 So. 2d 1317 (La. App. 5th Cir. 1990), which implicitly recognizes that capacity of a juvenile court to be a defendant, so easily. The Court notes evidence in this record that OPJC acted as a juridical entity, issuing checks, entering into contracts, purchasing equipment, etc. in its own name. This entity may very well have liability insurance in its name that covers acts taken by the judges of the Court in their official capacities.

[10] The Second Amended complaint is so prolix and contains so many allegations that are not actionable under any law that the Court cannot possibly traverse the document paragraph by paragraph to ensure that Plaintiffs are not adding in "new" claims or causes of action other than the equal protection claim. The Court stresses that leave to file the Second Amended complaint is being granted to cure the Title VII employer issue, and to provide the underlying basis (equal protection) for the parallel § 1983 claim.

violates both Title VII and a *separate* federal right. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). Section 1983 does not create any substantive rights but rather provides a remedy for the violation of a federally secured right. *Id.* at 1574. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983. *Id.* But the underlying federal right must be separate from the federal rights created by Title VII. *Id.* In other words, § 1983 is not merely an alternative legal basis upon which a public sector employee can rely to recover for employment practices rendered unlawful by Title VII. Further, unlike Title VII which limits liability only to the "employer," § 1983 provides a means to sue personally the official alleged of having violated the plaintiff's constitutional rights.

The only underlying constitutional violation to support a § 1983 claim against any defendant is under the Fourteenth Amendment's guarantee of equal protection.[11] The only defendant whose conduct toward Plaintiffs was discriminatory in a manner potentially violative of equal protection was David Bell's. Bell is alleged to have personally harassed Plaintiffs in a manner that altered their conditions of employment and for reasons solely attributable to their gender. Plaintiffs complain about various other occurrences at the OPJC that they perceive to be unfair or inequitable but the constitution does not guarantee absolute fairness in the workplace. It does, however, guarantee that Plaintiffs not suffer unequal treatment because of their gender. Again, the only defendant who personally subjected Plaintiffs to unequal treatment in light of their gender was Bell. Plaintiffs have not alleged facts sufficient to hold any other judge of the court personally liable for disparate

---

[11] The prior judge concluded that Plaintiffs had not stated a claim for a Fourteenth Amendment violation of the right to privacy, liberty, and substantive/procedural due process. This Court agrees with that conclusion and the Second Amended complaint does nothing to resuscitate those dead-on-arrival claims.

treatment attributable to gender. Plaintiffs motion to reconsider is therefore GRANTED as to the § 1983 claims against Bell in his individual capacity only.

In sum, all claims against the City of New Orleans remain dismissed. The Title VII claims against the State of Louisiana, the OPJC, as an agency of the State of Louisiana, and the judges of the OPJC in their *official* capacities are reinstated. Those Title VII claims are for retaliatory discharge (Griffith), constructive discharge (Guichard), and hostile work environment grounded on gender discrimination and harassment (Griffith and Guichard). The § 1983 claim for violations of equal protection are reinstated against David Bell in his individual capacity. The foregoing claims are the only claims pending in this action notwithstanding anything else that Plaintiffs have included in the Second Amended complaint. *See* note 10, *supra*.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Reconsider (Rec. Doc. 308)** filed by Plaintiffs Tammy Griffith and Stacey Guichard is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Amend Complaint (2nd Amended Complaint) (Rec. Doc. 306)** filed by Plaintiffs Tammy Griffith and Stacey Guichard is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion to Reconsider Prior [Dismissals] (Rec. Doc. 307)** filed by Plaintiffs Tammy Griffith and Stacey Guichard is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to the Title VII claims against the State of Louisiana, the OPJC, as an agency of the State of Louisiana, and the judges of the OPJC in their *official* capacities, and as to the § 1983 Fourteenth Amendment equal protection claims against David Bell in his individual capacity. The attorneys for these defendants shall appear at the status conference scheduled for **June 17,**

**2013, at 10:15 a.m.** in chambers. The motion is **DENIED** in all other respects.

June 4, 2013

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE