UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMMY GRIFFITH & STACEY GUICHARD | CIVIL ACTION |
| VERSUS | NO: 11-245 C/W 11-535 |
| CITY OF NEW ORLEANS, ET AL. | SECTION: "A" (1) |

**ORDER AND REASONS**
**[REF: All cases]**

The following motions are before the Court: **Motion for Judgment on the Pleadings and for Summary Judgment; Alternatively Partial Summary Judgment (Rec. Doc. 467)** filed by David Bell; **Motion for Summary Judgment (Rec. Doc. 464)** filed by the State of Louisiana and Orleans Parish Juvenile Court. Plaintiffs Tammy Griffith and Stacey Guichard have opposed the motions. The motions, scheduled for submission on September 10, 2014, are before the Court on the briefs without oral argument.[1]

## I. Background

This case arises out of allegations of gender-based discrimination and harassment by former Orleans Parish Juvenile Court ("OPJC") Judge David Bell, and other alleged retaliatory conduct by the other judges on the court.

Following significant motion practice during the course of the litigation, the Court summed up the remaining claims going forward as follows:

---

[1] David Bell has requested oral argument but the Court is not persuaded that oral argument would be helpful in light of the issues presented.

1

> [A]ll claims against the City of New Orleans remain dismissed. The Title VII claims against the State of Louisiana, the OPJC, as an agency of the State of Louisiana, and the judges of the OPJC in their *official* capacities are reinstated. Those Title VII claims are for retaliatory discharge (Griffith), constructive discharge (Guichard), and hostile work environment grounded on gender discrimination and harassment (Griffith and Guichard). The § 1983 claim for violations of equal protection are reinstated against David Bell in his individual capacity. The foregoing claims are the only claims pending in this action notwithstanding anything else that Plaintiffs have included in the Second Amended complaint.

(Rec. Doc. 353 at 14).

In the same Order and Reasons the Court granted Plaintiffs leave to file a Second Amended Complaint for the sole purpose of clarifying the Title VII employer issue and expressly alleging that their parallel § 1983 claims were based on equal protection. (*Id.* at 12). Defendants responded to the Second Amended Complaint with motions to dismiss which the Court granted in part and denied in part on October 9, 2013. (Rec. Doc. 384). Discovery ensued. Defendants now move for judgment as a matter of law on various issues, some of which overlap. This matter is scheduled to be tried to a jury on November 3, 2014. (Rec. Doc. 415).

## II.   Discussion

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-

moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### A. *Hostile Workplace Discrimination*
### *Bell and OPJC: Is Bell's Conduct Actionable?*

The sole claim against Bell individually is a § 1983 claim for a Fourteenth Amendment equal protection violation. This claim is based on the allegation that Bell personally harassed Griffith and Guichard in a manner that altered their conditions of employment, and that he did so for reasons solely attributable to their gender. The conduct that forms the basis of the § 1983 claim against Bell individually, also forms the basis of the hostile work environment sexual harassment claim against OPJC. Section 1983 and Title VII are "parallel causes of action" that are analyzed using the same inquiry. *See Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F,3d 157, 166 (5th Cir. 2007) (citing *Cervantez v. Bexar Cnty. Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996); *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)).

The creation of a hostile work environment through gender-based harassment is a form of discrimination proscribed by Title VII. *E.E.O.C. v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 452 (5th Cir. 2013) (citing *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2455 (2013)). Where a harassment claim arises out of a supervisor's conduct, "there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2)

that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment."[2] *Boh Bros.*, 731 F.3d at 453 (citing *Lauderdale*, 512 F.3d at 162-63). To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* (quoting *Aryain v. Wal–Mart Stores of Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008)). Sexually discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive as to alter the

---

[2] When the alleged harasser is a mere co-worker, the Title VII cause of action has an additional element, *i.e.*, the employer must have known (or should have known) of the harassment, and failed to take prompt remedial action. *See E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393,399 (5th Cir. 2007). Absent proof of this element, the Title VII cause of action against the employer fails. *Id.* Even though Griffith and Guichard reported directly to the judicial administrator, *Vance v. Ball State University*, a relatively recent decision, clarifies that "colloquial" use of the term "supervisor" in Title VII cases is incorrect. 133 S. Ct. 2434, 2443-44 (2013). Given that Bell was the chief judge of the OPJC, it would be nonsensical to view him as a mere co-worker to either plaintiff. Bell was clearly in a position to effect significant changes in employment status as to each plaintiff so he qualifies as a Title VII supervisor.

That said, even if Bell's alleged conduct was severe or pervasive enough to constitute workplace discrimination, it did not culminate in a tangible employment action for either plaintiff so under the principles of *Faragher/Ellerth*, OPJC may avoid Title VII liability by affirmatively showing that 1) it exercised reasonable care to prevent and promptly correct harassing behavior, and 2) the complainant unreasonably failed to take advantage of preventative or corrective measures made available to her. *Vance*, 133 S. Ct. at 2456 (Ginsburg, J., dissenting) (citing *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus.,Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

The Court recognizes that this case, which is based on the conduct of a sitting judge, does not fit easily into the *Faragher/Ellerth* framework. Because Bell was a sitting state court judge, only the Louisiana Supreme Court could take action against him by acting on a recommendation of the Judiciary Commission, which is what ultimately occurred. Moreover, even if Plaintiffs had in fact complained to the other judges about Bell's conduct before Judge Gray filed a formal complaint, because Bell had been the chief judge at the court, it is unclear what any other judge on the court could have done to "promptly correct" the harassing behavior. Perhaps another judge on the court could have filed a formal complaint sooner, and Plaintiffs clearly suggest that at least one other judge was dilatory in not doing so, but Plaintiffs too had the option of filing a formal complaint and they chose not to do so. In that vein, the question of whether the Judiciary Commission *could have* investigated Bell even in the absence of a formal complaint, (Rec. Doc. 481-3, Plaintiffs' Opposition at 10), is irrelevant because the conduct of the Judiciary Commission, *i.e.*, whether it could have acted sooner but failed to do so, is not on trial in this case.

conditions of the victim's employment and create an abusive working environment that violates Title VII. *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803,806 (5th Cir. 1996) (citing *Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 370-71 (1993)). But the "mere utterance of an . . . epithet which engenders offensive feeling in an employee" is not alone sufficient to support Title VII liability. *Id.* (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)). The court uses an objective "reasonable person" standard to evaluate severity and pervasiveness. *Boh Bros.*, 731 F.3d at 453 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). Ultimately, whether an environment is hostile or abusive depends on the totality of circumstances. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Both OPJC and Bell argue that the conduct that Plaintiffs allege on Bell's part was not severe or pervasive enough to support a claim for hostile work environment sexual harassment. Defendants characterize the conduct as perhaps boorish or offensive, but argue that it does not rise to the level of conduct necessary to support a cause of action for hostile work environment.

Nearly two years ago, the prior district judge characterized Plaintiffs' claims as "[appearing] marginal, at best," when denying the parties' then-pending motions for summary judgment. (Rec. Doc. 260). The conduct alleged is certainly inappropriate in the workplace but it may fall short of this Circuit's steep threshold for an actionable claim. *See Shepherd v. Comptroller of Pub. Accts.*, 168 F.3d 871 (5th Cir. 1999). But because the inquiry is so fact intensive and ultimately based on a totality of the circumstances, and in light of the specific allegations in this case, the Court is persuaded that it would be folly to reject Plaintiffs' claims at this juncture. Moreover, while Plaintiffs' federal claims must stand or fall on their own merit, the Judiciary Commission thought Bell's conduct serious enough to

5

recommend disqualification from office, and the Louisiana Supreme Court did ultimately adopt that recommendation. Defendants do point to persuasive facts that tend to impugn Plaintiffs' contentions regarding how the alleged conduct affected them and their ability to perform their jobs. But this Court is persuaded that the trier of fact must weigh the evidence and determine whether Plaintiffs suffered a Title VII/§ 1983 violation in light of Bell's conduct. This aspect of both motions is therefore DENIED.

### *Bell: Are Plaintiffs' Claims Against Bell Untimely?*

Federal courts apply the forum state's statute of limitations for § 1983 actions and the forum state's tolling principles. *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir 2008) (*citing Hardin v. Straub*, 490 U.S. 536 (1989); *Rodriguez v. Holmes*, 963 F.2d 799, 803 (5th Cir. 1992)). When damaging conduct is of a continuous nature, prescription does not begin to run until the date of the last harmful act. *Hunter v. Tensas Nursing Home*, 743 So. 2d 839, 842 (La. App. 2d Cir. 1999) (*citing So. Cent. Bell v. Texaco*, 418 So. 2d 531 (La. 1982)). The continuing tort doctrine requires not only that the tortious conduct be of a continuous nature, but also that it give rise to successive damages from day to day. *Id.* (*citing Crosby v. Keys*, 590 So. 2d 601 (La. App. 2d Cir. 1991)). Courts typically find torts to be continuous in nature where each individual act would not necessarily give rise to a cause of action but the cumulative effect of regularly occurring or continuous actions results in successive damages from day to day. *Id.*

In *Huckabay v. Moore*, 142 F.3d 233 (5th Cir. 1998), the Fifth Circuit held that a hostile workplace claim was subject to the continuing violation doctrine. The court was moved by the fact that the ongoing harassment was of the same nature (racial), was continual, and was allegedly a permanent condition of that plaintiff's workplace. *Id.* at 239.

Bell returned from his medical leave of absence in April 2010 and it is Plaintiffs'

contention that Bell resumed harassing them until the Louisiana Supreme Court disqualified him and banned him from the OPJC facility on June 15, 2010. Griffith filed her original complaint on February 7, 2011, and Guichard filed her original complaint on March 7, 2011. The Court has already held that the Second Amended Complaint relates back to the filing of the original complaint. (Rec. Doc. 384). The timeliness aspect of Bell's motion is therefore DENIED.

## B.     *Retaliation*

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice" under Title VII, "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, a plaintiff must show that: 1) she engaged in activity protected by Title VII; 2) an adverse employment action occurred; and 3) a causal link exists between the protected activity and the adverse action.[3] *Reine v. Honeywell Int'l, Inc.*, 362 Fed. Appx. 395, 398 (5th Cir. 2010) (citing *McCoy*

---

[3] Bell suggests that the "engaged in activity protected by Title VII" prong means filing the EEOC complaint, and he cites *Watkins v. Texas Department of Criminal Justice*, 269 Fed. Appx. 457, 467 (5th Cir. 2008) (unpublished), for that proposition. (Rec. Doc. 467-1, Bell's Memo at 16 n.5). *Watkins* merely confirms that filing the EEOC complaint is "undeniable" protected activity but the court never suggested that the filing of the complaint denotes the clear line of demarcation for triggering Title VII's retaliation protections. To the contrary, the *Watson* court specifically considered whether an earlier interoffice memo that the plaintiff had authored could be considered "protected activity" in that case. *Id.* at 461-62. Because the memo did not affirmatively raise the issue of racial discrimination it did not qualify as "protected activity." *Id.* at 462. But the very fact that the appellate court did not reject the memo outright and even went on to assume *arguendo* that the memo *was* protected activity, suggests that acts that occur prior to the date of filing an EEOC complaint can be actionable under the retaliation provision. *See id.* Thus, while it is undeniably clear that Title VII's retaliation provisions trigger once the EEOC complaint is filed, nothing in *Watkins* suggests that other prior acts taken in opposition to unlawful discrimination do not constitute "protected activity." But as the Court has previously warned, attempts to expose non-discriminatory improprieties or other malfeasant acts are not protected by Title VII. (Rec. Doc. 423 at 2-3).

*v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)). Assuming that the plaintiff makes such a showing the burden shifts to the employer to articulate nondiscriminatory reasons for its employment action. *Id.* If the employer satisfies this burden, the plaintiff bears the ultimate responsibility to prove that the employer's proffered reasons are a pretext for its true discriminatory motivation. *Id.*

In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), the Supreme Court rejected the Fifth Circuit's "ultimate employment decision" standard for Title VII retaliation cases and held that the plaintiff must only show "material adversity," *i.e.*, that the retaliatory act was injurious enough to have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* The Court explained that not all acts of retaliation are actionable. *Id.* at 67. Trivial harms, petty slights, minor annoyances, and simple lack of good manners, even if subjectively injurious, will not suffice to support a claim for unlawful retaliation. *Id.* at 68. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *Id.* The standard for judging harm is an objective one. *Id.*

### *Griffith*

Griffith's termination is clearly actionable as an act of retaliation. The Court is persuaded that the jury must determine whether Griffith was fired as a result of protected Title VII activity (causation). Likewise, only the jury can weigh the evidence and determine whether OPJC's reasons for terminating Griffith were pretextual. The Court will also allow the jury to determine whether Griffith's other grievances were "materially adverse" under

the standards of *White, supra*.[4] OPJC's motion is therefore DENIED as to Griffith's retaliation claim.

### *Guichard*

Guichard voluntarily resigned as opposed to being terminated. Constructive discharge can form the basis for a Title VII claim. *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997) (citing *Guthrie v. Tifco Indus.*, 941 F.3d 374, 377 (5th Cir. 1991)). To show constructive discharge, an employee must establish that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. *Id.* (quoting *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)).

OPJC points out that the hostility that Guichard cites in support of her intolerable working conditions actually predated any protected activity. The record does support the inference that Guichard had ongoing difficulties with Chief Judge Gray. Perhaps it was just the culmination of a long history of hostility that motivated Guichard to resign from the highest paying job that she had ever had to take a significant cut in pay. But the jury must weigh the evidence to determine whether OPJC made Guichard's working conditions so intolerable *because of her protected activity* that she was compelled to resign.[5] The Court

---

[4] The Court tends to agree that some of Griffith's other (non-discharge) grievances are not likely materially adverse from an objective standpoint. But even if some of Griffith's other grievances are not materially adverse so as to support an independent claim for retaliation, if the jury is persuaded that those acts were nonetheless retaliatory in nature, then the jury might be more likely to conclude that the discharge was retaliatory. Thus, because evidence of Griffith's other grievances would be admissible even if not materially adverse, and because the case must go the jury on the retaliatory discharge claim anyway, the Court can discern no good reason to start taking claims from the jury in a piecemeal fashion.

[5] It bears repeating (*see* Rec. Doc. 353 at 2 n.2), that the only "hostility" that is actionable in this case is hostility based on either severe or pervasive sexual harassment by Bell or acts of retaliation by the other judges on the court that rise to the level of material adversity. So for instance, even if Chief Judge Gray was in fact "abusive," and a "bully," with a "nasty attitude," (OPJC Exhibit 4, Guichard's 9/22/10 Complaint to Office of Special Counsel), Title VII is not implicated unless the hostility was triggered by "protected activity." Nothing in Guichard's

will also allow the jury to determine whether Griffith's other grievances were "materially adverse" under the standards of *White, supra.*[6] OPJC's motion is DENIED as to this issue.

### Griffith and Guichard Vis à Vis Bell

To the extent that either Griffith or Guichard is pursuing a claim against Bell personally for retaliation, summary judgment is GRANTED as to that claim. Bell was long gone from OPJC when the most significant acts of alleged retaliation for either plaintiff occurred. The Court agrees with Bell's position that any alleged retaliatory acts by him do not satisfy the objective standard of material adversity.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Judgement on the Pleadings and for Summary Judgment; Alternatively Partial Summary Judgment (Rec. Doc. 467)** filed by David Bell is **GRANTED IN PART AND DENIED IN PART** as explained above;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgement (Rec. Doc. 464)** filed by the State of Louisiana and Orleans Parish Juvenile Court is **DENIED** as explained above.

October 14, 2014

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

Complaint of 9/22/10 to OSC, and the 10/17/10 follow-up, supports that inference. Title VII does not protect employees from hostile conduct that is not based on their protected status or protected activity. *Farpella-Crosby*, 97 F.3d at 806 n.2.

[6] *See* note 4, *supra.*