UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMMY GRIFFITH & STACEY GUICHARD | CIVIL ACTION |
| VERSUS | NO: 11-245 C/W 11-535 |
| CITY OF NEW ORLEANS, ET AL. | SECTION: "A" (1) |

### RULING ON MOTIONS IN LIMINE
[REF: All cases]

This case arises out of allegations of gender-based discrimination and harassment by former Orleans Parish Juvenile Court ("OPJC") Judge David Bell, and other alleged retaliatory conduct by the other judges on the court. A jury trial in this case is scheduled to commence on November 3, 2014.

**I.    Bell's Motions in Limine**

**Judiciary Commission Recommendation and Related Court Decisions (Rec. Doc. 490)**

GRANTED IN PART AND DENIED IN PART.

Via this motion Bell moves to exclude any reference to the Louisiana Judiciary Commission's Recommendation (Vol. I) ("the Recommendation") of disqualification filed on June 2, 2010, and the related Louisiana Supreme Court decisions that reference it.

The Judiciary Commission ("JC"), while acting pursuant to its authority under Louisiana Constitution, Article V, § 25(C), recommended to the Louisiana Supreme Court that Bell be disqualified from his judicial duties and banned from all OPJC court facilities pending further proceedings. The JC supported the Recommendation with a written opinion that recites at length the testimony of witnesses who appeared before the Commission. On June 15,

1

2010, the Louisiana Supreme Court implemented the Recommendation without reasons but after specifically noting Bell's failure to file a timely response. *In re Bell*, 39 So. 3d 579 (La. 2010). Bell resigned from the bench two days later on June 17, 2010, which mooted any further proceedings before the JC or the Louisiana Supreme Court.[1]

The Recommendation document itself is rank hearsay, but even assuming that the document could satisfy some exception to the hearsay rule, its probative value is substantially outweighed by the potential for unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403. That the JC listened to many of the same witnesses who will testify in this case and presumably found them credible is of no moment because it will be the sole province of the jury empaneled in this Court to judge the credibility of the witnesses who testify in this case. The jury is free to reject as incredible the very witnesses that the JC found to be credible. It would be patently unfair to allow Plaintiffs to bolster the credibility of their case in this Court by putting the imprimatur of the JC on their evidence. A jury of lay persons will give undue weight to the Recommendation, which is based on violations of state law not federal law, and which is not binding on the court to which it is directed. *In re Clark*, — So. 3d —, 2014 WL 1810021 (La. May 7, 2014) (noting that the findings and recommendations of the JC are due no deference whatsoever).

Further, the Court will instruct the jury that its verdict must be based solely on the evidence presented at trial, as viewed in light of the law as the Court gives it to the jury. That

---

[1] The Recommendation was for immediate disqualification *pending further proceedings before the JC or the Louisiana Supreme Court*. La. S. Ct. R. XXIII, § 27(a). The disqualification was an interim step in the investigatory process and it did not effect either a suspension nor a removal from office, two forms of discipline that are not interim in nature. The judge continues to receive his salary while disqualified pending further proceedings. La. Const. art. V, § 25(C). The Court has at times perceived that Plaintiffs believe that Bell's resignation was a meaningless act in light of the disqualification two days earlier but legally that is not the case.

the JC crafted a recommendation based on evidence that may or may not be admitted in this case, and concluded that Bell's conduct was likely violative of the state judicial canons, is not probative of whether his conduct violated federal law. To the extent that the JC opined that sexual harassment might have occurred, that determination usurps the role of the jury. The jury could only be confused and misled by the Recommendation because it has no probative value whatsoever in their consideration of what happened at OPJC and whether any federal laws were violated. The same reasoning applies to the Louisiana Supreme Court summary orders implementing the Recommendation.

The Court finds Plaintiffs' arguments regarding the impeachment value of the Recommendation and the related orders to be unpersuasive.

But the Court does not find it appropriate to exclude "any reference" to the proceedings before the JC because the fact that those proceedings were the sole means under state law to "correct the harassing behavior," and that those proceedings did ultimately occur to do just that, are important for the jury to understand the *Faragher/Ellerth* defense that the Court alluded to in its prior ruling on Defendants' motions for summary judgment. (Rec. Doc. 544 at 4 n.2). In order to fully understand the claims and defenses, the jury will have to know that Judge Gray filed a complaint with the JC based on Plaintiffs' statements to her, and that the JC conducted a hearing that ultimately led to Bell's disqualification pending further investigation. But the details (the reasoning supporting it and the opinions stated) of the Recommendation will not be disclosed to the jury, and the jury will not be told that the JC found cause to believe that Bell was a threat to the safety and welfare of others, and that Bell was banned from the OPJC facilities upon disqualification.

Plaintiffs contend that the Recommendation must be admitted so that they can establish what they did to report the sexual harassment by Bell. Plaintiffs can certainly testify

3

as to the steps that they took in contacting Barbara Edin, and in testifying before the JC when subpoenaed to do so. And while it is Plaintiffs' contention that the Recommendation is merely the culmination of the events that they set in motion, (Rec. Doc. 526-1, Plaintiffs' Opposition at 3), the Recommendation specifically states that it is being made following the receipt of a complaint from Judge Gray.

**Rumors of Children and Lucien Gauff (Rec. Doc. 510)**

GRANTED.

Via this motion Bell moves to exclude any reference to rumors of children allegedly fathered by him. This proposed topic is nothing more than gossip, and its subject matter is not only unfairly prejudicial but irrelevant to Plaintiffs' claims. This subject will not be alluded to by  any witness during the trial and counsel will instruct their witnesses accordingly.

Bell also seeks to exclude Plaintiffs' counsel's husband Lucien Gauff from being called as a witness. According to the pretrial order (Rec. Doc. 549), Gauff will testify about "the warnings Murle Robinet directed him . . . to convey to his wife (i.e., counsel for Plaintiffs) about Defendant Bell, when he told her (i.e., Murle) that his wife was considering representing Plaintiff Griffith." This testimony is irrelevant and hearsay.

**Metropolitan Crime Commission (Rec. Doc. 508)**

GRANTED. The documents are hearsay, overly prejudicial, and for the most part irrelevant to whether Bell subjected Plaintiffs' to unwelcome sexual harassment. This case involves allegations of discrimination, not criminal activity.

**Barbara Edin Affidavit (Rec. Doc. 509)**

GRANTED.

Via this motion Bell seeks to exclude Barbara Edin's affidavit as inadmissible hearsay and because it relates to the proceedings before the JC. Plaintiffs contend that they need Edin's

4

affidavit to establish that they reported Bell's harassment to the JC before anyone else.

Bell did not include a copy of the affidavit with his motion. The Court assumes that the affidavit at issue is the one located at Rec. Doc. 210-15 and dated October 27, 2011. In that affidavit Edin identifies herself as Assistant Special Counsel for the Office of Special Counsel, The Judiciary Commission of Louisiana.[2] (Rec. Doc. 210-15 at ¶ I). The sole statement in the affidavit that serves Plaintiffs' needs is the statement that Edin met with Plaintiffs on December 17, 2009. Plaintiffs can testify to that fact on their own. The affidavit itself is hearsay and will not be admitted.

## II.     Plaintiffs' Motions in Limine

### Motion in Limine (Rec. Doc. 501)

DENIED subject to the limitations explained below.

Via this motion Plaintiffs seeks to exclude the three OPJC exhibits—two were implicated in Griffith's Civil Action 14-1435, which the Court dismissed, against the City of New Orleans, and one is an email that Griffith herself composed. All involve Judicial Administrator Denet. Plaintiffs contend that two of the documents are fabricated (the Denet notices) and that all of them are irrelevant to the specific reasons given for Griffith's discharge.

OPJC concedes that the Denet notices were not in Griffith's personnel file. But the State asks for the opportunity to authenticate the documents, and at the very least to question Griffith about the subject matter contained in them.

The motion is DENIED as to Griffith's email, which is not alleged to be fabricated. The motion is also DENIED as to the Denet notices but subject to OPJC laying a foundation regarding the documents. The "fabricated" documents were allegedly authored by Denet. If

---

[2] On March 5, 2012, the magistrate judge granted Edin's request for a protective order and quashed Plaintiffs' notice of deposition. (Rec. Doc. 179).

OPJC wants to admit them, then Denet will have to explain the full etiology of the documents. If Denet cannot authenticate them then they will be excluded. Either way, the subject matter of the documents is not irrelevant and Griffith can be questioned about the incidents that underlie the Denet notices.

**Motion in Limine (Rec. Doc. 502)**

DENIED.

Via this motion Plaintiffs ask the Court to exclude OPJC's Exhibits 4, 5, 6, and 8, all emails that Plaintiffs claim are being offered in violation of discovery rules. The motion is denied for the reasons argued in OPJC's opposition.

**Motion in Limine (Rec. Doc. 503)**

DENIED.

Via this motion Plaintiffs ask the Court to exclude Bell's Exhibits 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15, all of which pertain to the raises that Bell worked to obtain for Plaintiffs. Plaintiffs contend that the documents, many of which are emails, are not relevant to any issue in this case, and that they have not been authenticated.

The Court finds that the issue of the significant salary increases that Plaintiffs obtained is relevant to Plaintiffs' claims, particularly to Griffith's quid pro claim against Bell. The documents at issue can be authenticated at trial if that is an issue.

III. <u>OPJC's Motions in Limine</u>

**Motion in Limine (Rec. Doc. 505)**

GRANTED IN PART AND DENIED IN PART.

Via this motion OPJC seeks to exclude testimony and evidence relating to non-similarly situated employees. The specific employees being challenged are Crystal Curry, Marcia Johnson, David Honore, and Marisa Wallace. Plaintiffs assert that these individuals constitute

"similarly situated" comparator employees who received more favorable treatment for their workplace infractions. Plaintiffs intend to introduce evidence of the disparate treatment that these employees allegedly received to show that Plaintiffs were discharged for retaliatory reasons, and that OPJC's reasons to the contrary are pretextual.

Disparate treatment occurs where an employer treats one employee more harshly than other "similarly situated" employees for "nearly identical conduct." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing *Lee v. Kan. City S. R.R.*, 574 F.3d 253, 260 (5th Cir. 2009)). "Nearly identical" does not mean "identical" because a plaintiff could rarely if ever satisfy a requirement of complete or total identity. *Lee*, 574 F.3d at 260. "Nearly identical" situations occur when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially the same violation histories. *Id.* Critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proferred comparator who allegedly drew dissimilar employment decisions. *Id.*

The motion is GRANTED as to Honore and Curry. The allegation with respect to Curry involves the unauthorized use of a take home vehicle and the allegation with respect to Honore involves an OPJC Auto Body program for youth that supposedly had no participants. The conduct that these two employees allegedly engaged in is too dissimilar to any conduct by either plaintiff to allow their use as comparators.

Wallace's conduct is closer for comparison purposes—supposedly repeated failures to perform her accounting duties properly. Johnson's conduct—allowing certain employees to process employment paperwork for themselves or family members—is less similar. The Court will, however, allow Plaintiffs to use evidence of these other employees for comparator purposes.

**Motion in Limine (Rec. Doc. 506)**

GRANTED.

Via this motion OPJC seeks a ruling that the Court will not allow Plaintiffs to introduce evidence of matters that fall outside the scope of their specific employment claims. In particular, OPJC challenges the admissibility of any evidence of non-protected activity and of non-discrimination-based malfeasance in the workplace. More examples cited by OPJC are allegations pertaining to Honore and the Auto Body program, allegations pertaining t0 fund misappropriation, and other numerous categories of office malfeasance.

Plaintiff counter that they intend to use evidence of malfeasant conduct tolerated at OPJC to demonstrate the pretextual nature of the adverse employment actions to which they were subjected.

The Court has already addressed this issue in conjunction with OPJC's motion on comparator employees. Plaintiffs' claims involve protected Title VII activity not unprotected allegedly malfeasant conduct. The evidence that Plaintiffs want to introduce is not only irrelevant, but overly prejudicial and non similar under *Vaughn* and *Lee*, *supra*.

**Motion in Limine (Rec. Doc. 507)**

GRANTED.

Via this motion OPJC seeks to exclude any evidence pertaining to subsequent (after Plaintiffs left OPJC) revisions to employee manuals and Title VII training and workshops. OPJC contends that the subsequent changes constitute subsequent remedial measures for purposes of Federal Rule of Evidence 407 and should not be admitted.

Plaintiffs counter that they intend to use the manual to discredit Judge Gray by contradicting her assertion to the EEOC in July 2010 that Plaintiffs were not OPJC employees and that OPJC was not a proper respondent to Plaintiffs' charges.

The subsequent measures will not be admitted because they are irrelevant, particularly where the alleged harasser was a sitting judge subject to discipline only by the Louisiana Supreme Court upon recommendation of the JC. The Court fails to understand why Judge Gray's assertion to the EEOC is relevant to any aspect of Plaintiffs' claims or how it discredits Judge Gray. The employer issue is a legal question that at least two judges in this district have interpreted differently in light of the unique relationship between OPJC and the City of New Orleans.

October 21, 2014

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE